Commonwealth *v.* Chruscial, Appellant.

Argued November 15, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John J. Dean,* Assistant Public Defender, with him *George H. Ross,* Public Defender, for appellant.

*Carol Mary Los,* Assistant District Attorney, with her *Robert L. Campbell,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1972:

On March 4, 1968, the appellant, Edward Chruscial, with the assistance of counsel, entered a general plea of guilty to murder in Allegheny County. Following an evidentiary hearing, he was adjudged guilty by the court of murder in the second degree and was sentenced to imprisonment for a term of 10 to 20 years. This direct appeal[1] challenges the validity of the guilty plea. It is claimed the plea should have been rejected by the court, because it was accompanied by testimony on the part of Chruscial during the hearing to determine the degree of guilt which constituted a complete defense to the charge.

The pertinent law is clear. If a criminal defendant enters a plea of guilty and then asserts facts which, if true, would establish he is not guilty, such a plea is of no effect and should be rejected, since it is not entered knowingly and intelligently. *Commonwealth v. Roundtree,* 440 Pa. 199, 269 A. 2d 709 (1970). Our inquiry then is directed to the record and an examination of Chruscial's testimony to determine if his testimony manifested he was not guilty of the charge to which he admitted guilt.

---

[1] Chruscial did not file a timely appeal, however, in January 1971, the trial court permitted such an appeal as if timely filed after a hearing on a petition seeking post conviction relief.

The prosecution stemmed from the fatal shooting of a Mrs. Zenuh with whom Chruscial had lived on-and-off for a period of two years.

Before accepting the guilty plea, the court questioned Chruscial to make certain he understood the nature of the charge, and that the plea was voluntarily entered and with a knowledge of its impact. No questions were asked concerning the details of the shooting. After the Commonwealth introduced its testimony as to the circumstances of the fatal event,[2] Chruscial testified on his own behalf. The significant portions of his testimony are as follows:

On the day involved, Chruscial consumed a quantity of intoxicants; during the afternoon he borrowed a shotgun and some shells from his brother because he intended to hunt groundhogs the next day; that evening he went to Mrs. Zenuh's residence to seek reconciliation and he took the gun along to scare her; as he approached the front entrance of Mrs. Zenuh's residence, she came out and proceeded up the street without speaking to him; when she entered a neighbor's house he followed; inside this house he set the gun down and tried to talk to her but she only sneered at him; he then picked up the gun "to keep her from getting around the table so she wouldn't run," but "she started to run around the table . . . until she could run out of the house"; Mrs. Zenuh then said, "get the gun out of here and it went off". Chruscial specifically stated he did not "want" to kill Mrs. Zenuh, but merely "to frighten her" and was not "conscious" of pulling the trigger. He also said he did not "shoot" the gun but it "went off" when it was "hit" by Mrs. Zenuh. The crucial question is, did Chruscial's testimony establish an acci-

---

[2] The testimony of the Commonwealth directly contradicted Chruscial's subsequent testimony and was sufficient to warrant a finding of guilt of murder in the first degree.

dental killing which would be a complete defense to the killing. We conclude not.

In *Commonwealth v. Flax,* 331 Pa. 145, 156-57, 200 A. 632, 637-38 (1938), we pertinently said: "Homicide by misadventure (which is excusable) is the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. 'Three elements enter into the defense of excusable homicide by misadventure: [1] The act resulting in death must be a lawful one; [2] It must be done with reasonable care and due regard for the lives and persons of others; and [3] The killing must be accidental and not intentional, or without unlawful intent, or without evil design or intention on the part of the slayer. All these elements must concur and the absence of any one of them will involve in guilt. Even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state, or unlawfully striking another with an intent to hurt, although not with an intent to kill, or driving an automobile at an unlawful rate of speed': 30 C.J., page 87, Sec. 269." See also, *Commonwealth v. Pavillard,* 421 Pa. 571, 220 A. 2d 807 (1966).

Accepting the testimony of Chruscial as true, it is clear it did not establish an excusable homicide or homicide by misadventure. To be such, the act resulting in death must, inter alia, be lawful. Pointing a firearm at another human being, even to scare, is not a lawful act in Pennsylvania.

Judgment affirmed.

Former Mr. Chief Justice BELL and former Mr. Justice BARBIERI took no part in the consideration or decision of this case.