## Commonwealth, Appellant, *v.* Slavik.

Argued September 29, 1972.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused January 3, 1973.

*Roger J. Ecker,* Assistant District Attorney, with him *Jess D. Costa,* District Attorney, for Commonwealth, appellant.

*George K. Hanna,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 30, 1972:

On November 21, 1968, defendant-appellee, Thomas Slavik, pleaded guilty to murder generally.   At the degree of guilt hearing before a three-judge panel[1] defendant was found guilty of murder in the first degree and sentenced to life imprisonment.   Challenging the validity of his guilty plea, he appealed to this Court and on January 30, 1970, we affirmed the judgment of sentence.   *Commonwealth v. Slavik,* 437 Pa. 354, 261 A. 2d 583 (1970).   In July, 1970, Slavik filed a petition for relief under the Post Conviction Hearing Act,[2] again challenging the validity of his plea.   After a hear-

---

[1] Pa. R. Crim. P. 319(a).

[2] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §§1180-1 et seq.

ing the PCHA court granted the defendant a new trial. The Commonwealth has appealed that decision.

We reverse the grant of a new trial. The validity of Slavik's guilty plea was decided on his direct appeal when the case was before us in 1970. Hence that issue was there finally litigated within Section 4 of the Post Conviction Hearing Act.[3]

Section 4(a)(3) of the Post Conviction Hearing Act mandates that an issue is finally litigated if "[t]he Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue."[4] On direct appeal to this Court the defendant challenged the constitutional validity[5] of his guilty plea by claiming the plea was not made voluntarily. The theory upon which petitioner based this claim of involuntariness was that he had been induced to plead guilty because of the existence of an illegally obtained confession. This Court, specifically addressing itself to that issue, found no merit in defendant's contention and affirmed the conviction. Former Chief Justice BELL, speaking for a unanimous court, said, inter alia: "Defendant also raises on this appeal the voluntariness of his guilty plea. As a basis for this contention, defendant states that after he had been apprehended and placed in the Washington County jail, members of his family re-

---

[3] Id. §1180-4.

[4] Id. §1180-4(a)(3).

[5] In *Commonwealth v. Enty*, 442 Pa. 39, 40, 271 A. 2d 926, 927 (1971), we reiterated the existing test for the constitutional validity of a guilty plea: "To be Constitutionally valid, a plea of guilty must have been voluntarily, knowingly and intelligently made by defendant, i.e., with an understanding of the nature of the charges against him, his right to a jury trial and an awareness of the consequences of his plea. Commonwealth v. Roundtree, 440 Pa. 199, 269 A. 2d 709; Commonwealth v. Cottrell, 433 Pa. 177, 249 A. 2d 294; Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 199 A. 2d 424; Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A. 2d 196; Boykin v. Alabama, 395 U.S. 238, 242."

quested Assistant District Attorney Herman Bigi to visit the defendant in jail. Mr. Bigi had represented the defendant prior to becoming Assistant District Attorney and was invited to visit the defendant as a friend. The meeting with defendant took place on July 30, 1968, several days prior to Morgo's death. At the time of Bigi's visit, defendant was not represented by counsel. The meeting between the defendant and Bigi began in a friendly manner, but concluded in Bigi's giving defendant the required Miranda (Miranda v. Arizona, 384 U.S. 436) warnings and obtaining a written confession signed by defendant. Defendant urges that this confession was not voluntary and was not admissible, but that its existence induced and in effect required him to plead guilty, which he would not have done in the absence of such a confession.

"We are at a loss to appreciate this contention in view of the fact that on November 12, 1968—nine days prior to his guilty plea, at which time he was represented by counsel—the trial Court granted defendant's motion to suppress the confession and impound the record of the hearing relating to the confession." *Commonwealth v. Slavik,* 437 Pa. 354, 359, 261 A. 2d 583, 585-86 (1970). This Court's determination was unquestionably a direct response on the merits to defendant's challenge to the validity of his 1968 guilty plea.

In the present PCHA petition one of the issues[6] on which Slavik based his claim for relief was the inva-

---

[6] Petitioner raised four other issues in his PCHA petition; (1) the introduction of evidence obtained pursuant to an unlawful arrest; (2) the infringement of privilege against self-incrimination; (3) denial of representation by competent counsel; and (4) abridgement of a right guaranteed by the Constitution. These issues were not disposed of by the hearing court, and are not before us on this appeal. The Commonwealth's appeal is directed to the hearing court's grant of a new trial based only on the invalidity of the guilty plea.

lidity of the guilty plea—the same question decided adversely to him on the direct appeal. However, in this petition Slavik urged a *new theory* to support his previously presented and litigated claim that his plea was constitutionally infirm. Slavik asserted that under *Commonwealth v. Roundtree,* 440 Pa. 199, 269 A. 2d 709 (1970), his plea "should not have been accepted because the plea was no more than an ambiguous expression of qualified guilt coupled with a protestation of innocence." While it is true that under *Roundtree* if a defendant pleads guilty and *simultaneously* asserts facts establishing a defense to the charge his plea should be rejected, nevertheless Slavik cannot avail himself of *Roundtree* for two reasons. First his claim has been finally litigated; and secondly, *Roundtree* does not apply because Slavik did not present any exculpatory facts at the time he entered his plea.[7]

---

[7] In *Roundtree* this Court stated: "We think it is logical and correct that if a defendant pleads guilty to a criminal charge, and *in the next breath* contravenes the plea by asserting facts which, if true, would establish that he is not guilty, then his guilty plea is of no effect and should be rejected. For on its face, such a situation would show that the plea was not entered with a complete comprehension of its impact. Commonwealth v. Cavanaugh, 183 Pa. Superior Ct. 417, 133 A. 2d 288 (1957) ; and United States ex rel. Crosby v. Brierley, 404 F. 2d 790 (3d Cir. 1968). *In other words, a defendant should not be allowed to plead 'guilty' from one side of his mouth and 'not guilty' from the other."* Commonwealth v. Roundtree, 440 Pa. 199, 202, 269 A. 2d 709, 711 (1970) (emphasis added).

Slavik premised his claim on the belief that the facts surrounding the entry of his guilty plea compel its rejection under *Roundtree.* The record shows, however, that Slavik entered an unequivocal plea of guilty. It was not until the following day, after a three-judge court was empanelled at the degree of guilt hearing that Slavik presented any facts tending to establish an affirmative defense to the charge of murder, or to rebut the Commonwealth's attempt to elevate the offense to murder in the first degree, or in mitigation of the offense. Moreover, this may not, at this stage of

Based on its belief that *Roundtree* was applicable and was a change in the law, the hearing court granted a new trial. A reading of *Roundtree* with its progenitor, *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A. 2d 294 (1969), makes it clear, however, that *Roundtree* does not represent a change in the law, but is merely another decisional reaffirmance of the existing law set forth in *Cottrell.*[8] What the hearing court failed to

---

the proceedings be viewed as an attack on the validity of the plea itself. *Roundtree* was meant to apply only to those situations where *at the same time* a defendant enters a plea he *simultaneously* proclaims his innocence and asserts exculpatory facts. Here no such facts were presented at the entry and acceptance of the guilty plea. On this record, therefore, *Roundtree* is inapplicable.

[8] Prior to *Roundtree* the law relating to the acceptance of guilty pleas was articulated in *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A. 2d 294 (1969). There we stated: "It is axiomatic that for a plea of guilt to be constitutionally valid, it must be the voluntary and intelligent act of the maker. In short, it cannot be the product of ignorance, i.e., the accused must know what he is doing and be fully aware of the consequences of his act. And where the accused at the time of arraignment does not know, or asserts that he does not know, whether he has committed the crime, a plea of guilty to that crime should be accepted with great caution. However, such a situation, as the one just described, is not to be equated with a situation *where the accused admits his guilt in one breath, but in the next proclaims his innocence.* The latter clearly would not be a sufficient plea upon which to enter a judgment. But where there is significant evidence of guilt as there was in the present case, and the accused, after adequate consultation with his counsel, decides to plead guilty, that plea is not rendered invalid merely because the accused is unable or unwilling to detail the occurrence in court." Id. at 178-79, 249 A. 2d at 295 (citations omitted) (emphasis added).

In *Roundtree* this Court not only followed *Cottrell*, but also used almost identical language: "[I]t is logical and correct that *if a defendant pleads guilty to a criminal charge, and in the next breath contravenes the plea* by asserting facts which, if true, would establish he is not guilty, then his guilty plea is of no effect and should be rejected." *Commonwealth v. Roundtree*, 440 Pa. 199, 202, 269 A. 2d 709, 711 (1970) (emphasis added).

consider was the one most important, and indeed the dispositive issue in this case—the finally litigated aspect of Slavik's claim under Section 4 of the PCHA. See *Commonwealth v. Hill,* 444 Pa. 75, 77, 279 A. 2d 170, 172 (1971) ; *Commonwealth v. Gates,* 429 Pa. 453, 457, 240 A. 2d 815, 817 (1968). Merely because appellee advances a *new or different theory* as a basis for his previously adjudicated claim does not alter the fact that this precise *issue* was decided adversely to petitioner in his previous 1970 direct appeal.

The Supreme Court of the United States, confronted with this identical issue in the analogous context of repetitive federal habeas corpus petitions, stated, inter alia, in *Sanders v. United States,* 373 U.S. 1, 15, 83 S. Ct. 1068, 1077 (1963), that relief could be denied if "the same ground presented in the subsequent application was determined adversely to the applicant on the prior application." The Court went on to define "ground" as: "a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different 'ground' than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. *So also, identical grounds may often be supported by different legal arguments, . . .*" Id. at 16, 83 S. Ct. at 1077 (emphasis added).

---

Consequently there is no basis for granting a new trial to petitioner on the theory that *Roundtree* established a rule not available to petitioner on his direct appeal. Indeed, Slavik could clearly have raised this argument in challenging the validity of his plea under *Cottrell* just as easily as under *Roundtree.* See *Commonwealth v. Sampson,* 445 Pa. 558, 285 A. 2d 480 (1971) (ROBERTS, J., concurring).

Here appellee in the collateral proceeding raises the same "ground" for relief he raised in his direct appeal —the constitutional infirmity of his guilty plea. The only difference is that now he advances a "different legal argument" in support of that "ground." On direct appeal he contended his plea was infirm because coerced by the existence of an illegally obtained confession. Now he challenges the validity of his plea based on the holding of *Roundtree, supra.* A defendant is not entitled to relitigate the validity of his plea every time he offers a new theory or argument which he had not previously advanced.[9] To hold otherwise would virtually emasculate Section 4(a) of the PCHA, defeat its very objective, and permit constant and repetitive relitigation of issues already finally decided on their merits. "In the main, post-conviction remedies exist to try fundamental issues that have not been tried before." American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Post Conviction Remedies, §6.1 (Approved Draft,

---

[9] In *Commonwealth v. Simon*, 446 Pa. 215, 285 A. 2d 861 (1971), we faced an analogous situation in the context of a waiver under Section 4 of the PCHA. There appellant attempted to avoid the waiver rule by presenting on collateral attack a different argument. We stated: "The fact that appellant's conflict of interest claim arises from an allegedly novel factual situation does not bring this case under the *Cheeks* rule which precludes a waiver in instances of newly announced principles of law. All of the facts and legal precedents necessary to construct and argue this claim were as available at the time of appellant's direct appeal as they are now. So long as counsel in her prior appeal was constitutionally effective, the fact that her present counsel may perhaps be more imaginative in constructing allegations of trial error is of no moment. To excuse an otherwise effective waiver of a claim on the sole ground that the claim arises from a novel factual setting is contrary to the significant policies of finality clearly embedded in Sections 3 and 4 of the Post Conviction Hearing Act . . . ." Id. at 219, 285 A. 2d at 863.

1968) ; cf. *Commonwealth v. Black,* 433 Pa. 150, 249 A. 2d 561 (1969).

Appellee's attack on the validity of the guilty plea was conclusively decided by this Court in 1970. That issue, so determined, reached the procedural and substantive end-of-the-line of the state's judicial process. Thereafter that same issue could not be subsequently reintroduced for judicial decision and again begin a tour of the state's judicial system. Indeed, Pennsylvania has a significant and compelling jurisprudential interest in preventing the useless burdening of its judicial machinery with repetitive consideration of issues previously decided. It is evident that the orderly administration of justice requires that a criminal controversy, like any other litigation, some day come to an end. Therefore, since the determination of the guilty plea's validity was a final decision on the merits of that issue within Section 4 of the PCHA, that issue may not be relitigated in a PCHA proceeding simply because another theory or argument is advanced.

The grant of a new trial is reversed.