Commonwealth, Appellant, *v.* Thomas.

Argued November 16, 1972. Before Jones, C. J.,
Eagen, O'Brien, Roberts, Pomeroy, Nix and Man-
derino, JJ.

*Philip J. O'Malley,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellant.

*David E. Auerbach,* Assistant Public Defender, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 16, 1973:

This is an appeal by the Commonwealth from the order of the Superior Court vacating the judgment of sentence entered against the defendant, Gene LaFunies Thomas, and remanding for a trial on the merits.

The defendant was arrested and charged with possession and sale of narcotics after selling two glassine bags of heroin to a State Police undercover agent. The case came to trial on October 14, 1971, before the Honorable Joseph W. deFURIA, JR., of the Delaware County

Court of Common Pleas. At that time the defendant, who had been represented by counsel throughout the proceedings, indicated his desire to change his plea from not guilty to guilty. After a complete, on-the-record examination of the defendant concerning the voluntariness and consequences of his plea of guilty, the court accepted the plea. Sentencing was deferred pending the preparation of a pre-sentence report. Thirty-five days later, on November 19, 1971, the defendant was brought before the court for sentencing. At that time counsel for the defendant urged the court to place the defendant on probation. Before imposing sentence the judge asked the defendant if there was anything he wanted say. The defendant answered affirmatively and made several statements about his present employment status and a previous conviction. Then the following discussion, which formed the basis for the Superior Court's order vacating the judgment of sentence and remanding for a trial on the merits, occurred: "DEFENDANT: . . . As far as using drugs, I have never used drugs. I have never sold drugs. THE COURT: Now wait a minute, wait a minute. You pleaded guilty. DEFENDANT: I did plead guilty, Your Honor, because I had no alternative really. DEFENSE COUNSEL: There is no function in attacking the merits of the complaint [sic]. It has been entered. You cannot enter a plea of guilty and say well, really, I am not guilty. THE COURT: Let him say his piece. Have you anything further? DEFENDANT: Well, I was just going to say that at 2303 [defendant's residence] I am buying [the house]. I have two fellows there, one of my nephews, and another fellow living with me. One of the fellows, I understand, was selling drugs. One case, I came home one night and they had a raid at the house. I was not aware that drugs were being sold from my house. That is all I have to say, Your Honor." At that point, with-

out considering the implications of the defendant's statement that he had never used or sold drugs, the trial judge sentenced him to five to ten years' imprisonment in accord with the applicable provisions of The Drug, Device and Cosmetic Act in force at the time.[1]

On appeal to the Superior Court the defendant did not challenge the propriety of the entry or acceptance of the guilty plea. The defendant argued that the sentence imposed by the trial court was constitutionally invalid as cruel and unusual punishment and was a denial of equal protection.[2] The Superior Court did not

---

[1] Act of September 26, 1961, P. L. 1664, §20, *as amended*, 35 P.S. §780-20(d), *repealed by* The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, Act No. 64, 35 P.S. §780-101 *et seq.* Section 20(d) of the 1961 Act provided for a fine not exceeding $5,000 and imprisonment for an indeterminate term having a minimum of five years and a maximum of twenty years for a first offender convicted of selling narcotic drugs. However, Section 20(e) of the Act gave the sentencing judge the power to suspend the imposition or execution of the sentence and grant probation if the violation was a first offense. In this case the trial judge refused to consider probation for the defendant because he had been convicted of several other crimes, unrelated to narcotics. Reluctantly the judge sentenced the defendant to a "minimum" sentence of five to ten years. The judge commented: "I don't like the five year minimum but there it is. . . . I am going to give him the minimum sentence, and you can take it that I don't think he is entitled to that much, the minimum. . . . He is going to get five years to ten because I have to give it to him. You might tell the Probation Board or whatever it is, the Parole Board, that I would not have given him more than two and a half years."

[2] The two constitutional arguments raised in the appeal to the Superior Court are also raised in this appeal. The first contention is that the interplay of the penalties provided in the 1961 Act amounts to cruel and unusual punishment. Section 20(d) of the Act, 35 P.S. §780-20(d), provides a five-year *minimum* sentence for first offenders convicted of selling narcotic drugs. However, Section 20(e), 35 P.S. §780.20(e), allows the court to suspend the imposition of sentence on first offenders and grant probation or parole. The defendant argues that the disparity of the two permissi-

reach the constitutional issues raised by the defendant. In a unanimous opinion by Judge HOFFMAN, the Superior Court held, on its own motion, that the trial judge should not have accepted the defendant's guilty plea. The Superior Court vacated the judgment of sentence and granted the defendant a new trial. The Commonwealth sought leave to appeal the Superior Court's ruling and we granted review.

The holding of the Superior Court was in error. The Court relied on the rule of *Commonwealth v. Sampson,* 445 Pa. 558, 563, 285 A. 2d 480, 483 (1971), that it is error for a trial court to accept a guilty plea accompanied by a denial of responsibility and an assertion of facts establishing an affirmative defense. After concluding that the defendant's statement that he neither used nor sold drugs and that one of his roommates may have been selling drugs met the *Sampson* test, the Court ordered a new trial. What the Superior Court did not consider, however, was the thirty-five day delay between the entry of the defendant's guilty plea and his subsequent "denial" of responsibility just prior to sentencing.[3] In every case which has considered the

---

ble sentences for first offenders, coupled with the absence of any sentencing middle ground, is cruel and unusual. The defendant also contends that the imposition of a minimum sentence is violative of the Equal Protection Clause of the Fourteenth Amendment, since women convicted of the same crime do not receive minimum sentences under the provisions of the Muncy Act, Act of July 25, 1913, P. L. 1311, §15, *as amended* by the Act of July 16, 1968, Act No. 171, 61 P.S. §566 (Supp. 1972). In light of the disposition of this case it is not necessary to discuss the merits of either of these contentions.

[3] It is possible that the Superior Court was not aware of this delay. Since the only issue raised on appeal to the Superior Court was the validity of the sentence, only the record of the November 19 sentencing hearing, when the defendant made his exculpatory statements, was before the Court. The Court did not have the record of the October 14 hearing and may not have been aware that the guilty plea had been knowingly and voluntarily entered thirty-five days before the defendant made any equivocal statements.

propriety of accepting an equivocal guilty plea, the exculpatory statements were made contemporaneously with the entry of the plea.[4]

The only statements which can be considered by the trial judge in determining whether to accept a guilty plea are those made at the time the plea is entered. Recently in *Commonwealth v. Slavik*, 449 Pa. 424, 297 A. 2d 920, (1972), we rejected the argument that an alleged "protestation of innocence" made one day after the entry of the guilty plea could render the plea unacceptable. Relying primarily on the language of *Commonwealth v. Roundtree*,[5] the opinion in *Slavik* makes it clear that claims of innocence and the assertion of exculpatory facts cannot be used to attack a plea of guilty unless they are made at the same time the guilty plea is entered. Therefore, in this case the defendant's statement, made thirty-five days after his guilty plea had been accepted, came far too late to require refusal of his earlier guilty plea as equivocal under the rationale of *Roundtree* and *Sampson*. The defendant's statement was not accompanied by a request to withdraw his plea nor has he ever requested to withdraw his plea. The sole issue before us is involved with the *acceptance* of the plea.

---

[4] *See, e.g., Commonwealth v. Chruscial*, 447 Pa. 17, 288 A. 2d 521 (1972) ; *Commonwealth v. Blackman*, 446 Pa. 61, 285 A. 2d 521 (1971) ; *Commonwealth v. Shank*, 446 Pa. 59, 285 A. 2d 479 (1971) ; *Commonwealth v. Sampson*, 445 Pa. 558, 285 A. 2d 480 (1971) ; *Commonwealth v. Roundtree*, 440 Pa. 199, 269 A. 2d 709 (1970) ; *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A. 2d 294 (1969).

[5] 440 Pa. 199, 202, 269 A. 2d 709, 711 (1970).

"We think it is logical and correct that if a defendant pleads guilty to a criminal charge, and *in the next breath* contravenes the plea by asserting facts which, if true, would establish that he is not guilty, then his guilty plea is of no effect and should be rejected. . . . In other words *a defendant should not be allowed to plead 'guilty' from one side of his mouth and 'not guilty' from the other*." (Emphasis added)

The reluctance to accept an equivocal guilty plea stems from two independent grounds: (1) the desire of society to insure that an innocent man is not punished unjustly and (2) the interest of society in assuring that the perpetrator of the crime does not go unpunished.[6] As a practical matter, however, the guidelines governing the *acceptance* of equivocal guilty pleas serve only one function, to aid the trial judge in determining whether the plea should be accepted as offered. Where, as here, the defendant's protestations of innocence are not made until long after the plea has been offered and accepted, the rules governing the acceptance of equivocal guilty pleas are inapplicable. Of course, if the trial judge harbored any substantial doubts about the defendant's guilty plea after the equivocal statements were made, the judge had the power to direct the withdrawal of the plea and the substitution of a plea of not guilty. Pa. R. Crim. P. 320.

Although we reverse the judgment of the Superior Court awarding the defendant a new trial, we cannot affirm the judgment of sentence imposed by the trial judge. The defendant was charged with selling heroin in violation of Section 4(q) of The Drug, Device and Cosmetic Act of 1961, 35 P.S. §780-4(q). After pleading guilty to the charges, he was sentenced in accord with Section 20(d) of the 1961 Act, 35 P.S. §780-20(d), which provides for a maximum sentence of twenty years' imprisonment for the first offense. However, during the pendency of this appeal, the Legislature repealed the 1961 Act and enacted The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972,[7] in its place. Section 39(a) of the new Act provides: "(a) Prosecution for any violation of law occur-

---

[6] *See* Smith, *Equivocal Guilty Pleas—Should They Be Accepted?*, 75 Dick. L. Rev. 366, 371-73 (1971).

[7] Act No. 64, 35 P.S. §780-101 *et seq.*

ring prior to the effective date of this act is not affected or abated by this act. In any case not yet final if the offense is similar to one set out in this act, the penalties under this act apply if they are less than those under prior law."[8]

Three elements must be present before a pending prosecution can be governed by the new Controlled Substance Act: (1) the original offense charged must be similar to one set out in the new Act; (2) the penalties provided in the new Act must be less than those established by the prior law; and (3) the case must not be finally litigated. All three criteria are present in this case.

Initially we note that heroin is one of the "controlled substances" regulated by the 1972 Act.[9] Section 13 of The Controlled Substance Act prohibits the unauthorized sale of all controlled substances, including heroin. Thus, the first criterion for the application of the penalties in the 1972 Act is present; there is an offense in the new Act which is similar to the offense charged under the prior Act. The second requirement is also fulfilled. Whereas the maximum permissible sentence for selling heroin under the 1961 Act was twenty years' imprisonment (with a five-year minimum sentence), the maximum sentence permissible under the 1972 Act is fifteen years with no specified minimum sentence.[10]

---

[8] Act No. 64, §39(a), 35 P.S. 780-139(a). In a subsequent amendment to the new Controlled Substance Act, the Legislature added an "effective date" section to the Act making Section 39 effective immediately. Act of June 27, 1972, 35 P.S. §780-144.

[9] Act of April 14, 1972, §4(1)(ii)(10), 35 P.S. §780-104(1)(ii)(10). Heroin is listed in Schedule I which includes substances "with a high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision".

[10] The advantages of applying the more flexible sentencing provisions of the 1972 Act are obvious in this case where the trial

Finally, Section 39 of the 1972 Act provides that the penalty provisions of the new Act are only applicable to cases which are "not yet final." In *Linkletter v. Walker*, 381 U.S. 618 (1965), the United States Supreme Court held that the exclusionary rule announced in *Mapp v. Ohio*, 367 U.S. 643 (1961), would not be applied to cases which were "final" prior to the date of the *Mapp* opinion. In a footnote the Court explained: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed. . . ." 381 U.S. at 622 n. 5. This case is before us on appeal pursuant to a grant of allocatur. Clearly, under the *Linkletter* test, the judgment in this case is not yet final.[11] Therefore, the defendant in this case is entitled to be sentenced in accord with the provisions of The Controlled Substance, Drug, Device and Cosmetic Act of 1972.

The Order of the Superior Court is reversed, the judgment of sentence is vacated and the case is remanded to the Delaware County Court of Common Pleas for resentencing consistent with this opinion.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result on two grounds. First, since appellee failed to raise any challenge to his guilty plea in the Superior Court, he has waived his right to litigate that issue here. Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §4, 19 P.S. §1180-4. Secondly, here, as in *Commonwealth v. Slavik*,

---

judge felt compelled by the minimum sentence provision of the prior law to impose a more severe sentence than he deemed necessary. *See* note 1, *supra*.

[11] The Superior Court reached a similar conclusion concerning the applicability of the penalty provisions of the 1972 Act in *Commonwealth v. Simpson*, 222 Pa. Superior Ct. 296, 303, 294 A. 2d 805, 808 (1972) (JACOBS, J.).

449 Pa. 424, 297 A. 2d 920 (1972), defendant made no request to withdraw his guilty plea at the time he introduced allegedly exculpatory facts. Had such a request been made we would be presented with an entirely different issue. See *Commonwealth v. Santos,* 450 Pa. 492, 301 A. 2d 829 (1973); *Commonwealth v. Forbes,* 450 Pa. 185, 299 A. 2d 254 (1973).

Mr. Justice NIX and Mr. Justice MANDERINO join in this concurring opinion.