## Commonwealth *v.* Eskra, Appellant.

Submitted June 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Kenneth Dale Brown,* Assistant Public Defender, for appellant.

*Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 22, 1975:

Appellant contends that the lower court erred in accepting his guilty plea because at the time the plea was offered, appellant asserted facts inconsistent with guilt.

On December 9, 1973, appellant was charged in a criminal complaint with indecent assault, attempted rape, and assault. Pursuant thereto, a preliminary hearing was held on February 4, 1974, at which time appellant was bound over for trial. On May 20, 1974, appellant appeared for trial at the Lycoming County Court House, Williamsport. Appellant entered into a plea bargain whereby the

district attorney agreed to dismiss the charge of attempted rape on the conditions that appellant plead guilty to indecent assault, and that appellant seek professional help for his "problem."[1]

After the plea arrangement was presented to the court, the following colloquy took place:

"Q. [by the court] I will accept the plea. Now, are you pleading guilty of your own free will?

"A. [by appellant] Yes, Sir.

"Q. With the full understanding of what the consequences might be?

"A. Yes, Sir.

"Q. Tell me what happened?

"A. I met a girl at the Bar and she was looking at me and I was looking at her, and I went up and talked to her and before you know it, I was buying her drinks. She was, had her hands all over me. I had my arms on her, and she had one of these criss-cross blouses on, and everything was hanging out all over the place, and a lot of the guys knew her that was there, and they said, 'Don't get involved with her', but I didn't listen to them, so I sat down and bought her drinks and everything, and then asked her if she wanted to go out for breakfast, so I took her out for breakfast and bought her ear rings, it was her birthday, she wanted me to buy her a paper, so I bought her a paper, after that we went out and parked just like any other guy would, and she started getting violent with me, and then I said, 'I will, just let me take you to your car', and I was trying to control her, and she was getting more out of hand, and I said, 'Let me take you to your car?', and finally she got so

---

1. Neither the court nor the attorneys specified what "problem" appellant suffered from. Although appellant had another arrest in Oklahoma that involved molesting a teenage girl, there was reference in the record to appellant's drinking problem. At the time of the incident, he was apparently under the influence of alcohol.

much out of hand I didn't want nobody to get hurt, so I just let her go, and her purse was in the car and I threw the purse out and yelled at her, 'Here is the purse', I felt that was the right thing to do, was let her go, because I couldn't calm her down, and I was told beforehand to stay away from her, and I should have, but she kept putting me on.

"By The Court: Do you think he would be convicted?

"By Mr. Bonner [defense counsel]: Yes, I do.

"By The Court: I imagine you made an investigation?

"By Mr. Bonner: We had a preliminary hearing.

"By The Court: What did she testify to?

"By Mr. Bonner: Basically the same thing and admitted she got probably over excited, but she said my Client did attempt to . . . .

"By the Court to Defendant: Did you attempt, did you have indecent contact with her?

"A.   I didn't make any indecent contact with her, I held her and stuff like that. Her pants was down, but mine were not or nothing. That is when she started, first she wanted me to do it, then she started getting boisterous, that is when I stopped right then and there, as soon as she got going 'buggy'.

"Q.   Did you strike her at all?

"A.   She said I did, but I didn't.

"By the Court: Are you satisfied that I accept the plea?

"By Mr. Bonner: Yes.

"By The Court: I assume you have no further information?

"By Mr. Fithian [the District Attorney]: No.

"By Mr. Bonner: The Police Officers agreed there is no Criminal Attempt here.

"By The Court: May I see Counsel?

"(Side Bar consultation not made a part of the record.)

"By The Court: I will accept your plea."

For a guilty plea to be valid, "it must not only be the free and voluntary act of the maker, but it must also be intelligently and knowingly entered. *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A. 2d 294 (1969)." *Commonwealth v. Roundtree*, 440 Pa. 199, 202, 269 A. 2d 709, 711 (1970). The Supreme Court went on to state in *Roundtree* that "[w]e think it is logical and correct that if a defendant pleads guilty to a criminal charge, and in the next breath contravenes the plea by asserting facts which, if true, would establish that he is not guilty, then his guilty plea is of no effect and should be rejected. For on its face, such a situation would show that the plea was not entered with a complete comprehension of its impact . . . . [citations omitted]. In other words, a defendant should not be allowed to plead 'guilty' from one side of his mouth and 'not guilty' from the other. And when a plea of guilty is entered, it is not then for the court to determine guilt or innocence." *Id.* See also, *Commonwealth v. Cottrell*, supra; *Commonwealth v. Sampson*, 445 Pa. 558, 285 A.2d 480 (1971); *Commonwealth v. Shank*, 446 Pa. 59, 285 A.2d 479 (1971); *Commonwealth v. Blackman*, 446 Pa. 61, 285 A.2d 521 (1971); *Commonwealth v. Robinson*, 452 Pa. 316, 305 A.2d 354 (1973). The facts asserted by the defendant must amount to more than a mere flat denial of guilt and must be a complete defense to the crime charged. *Commonwealth v. Sampson*, supra; *Commonwealth v. Blackman*, supra; *Commonwealth v. Baldwin*, 219 Pa. Superior Ct. 153, 280 A. 2d 654 (1971).

In *North Carolina v. Alford*, 400 U.S. 25 (1970), the United States Supreme Court held that the Constitution is not violated "where the guilty plea was entered in open court on the advice of competent counsel and supported by substantial prosecution evidence, . . . [even though] it was not followed by an admission of guilt." *Commonwealth v. Blackman*, supra at 63, 285 A. 2d at

522. Despite the Court's ruling in *Alford*, *Roundtree* remains the law in Pennsylvania: "In *Commonwealth v. Blackman*, 446 Pa. 61, 285 A. 2d 521 (1971), we were asked to reconsider, in light of *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970), our earlier holding in *Commonwealth v. Roundtree*, 440 Pa. 199, 269 A. 2d 709 (1970). . . . We declined in *Blackman* to reconsider our earlier decision, because we believed that '[a]lthough our statement in Roundtree may not be constitutionally required, we are still convinced of its wisdom.' *Blackman*, supra at 64, 285 A.2d at 522." *Commonwealth v. Campana*, 455 Pa. 622, 625, n. 5, 314 A. 2d 854, 856, n.5, addendum opinion to 452 Pa. 233, 304 A. 2d 432 (1973), on remand from the U.S. Supreme Court, 414 U.S. 808 (1973). Thus, the law in Pennsylvania requires that a trial court must reject a tendered plea of guilty if the defendant at the same time recites facts sufficient to constitute a defense to the criminal charge. *Roundtree*, supra; cf. *Commonwealth v. Slavik*, 449 Pa. 424, 297 A. 2d 920 (1972) ; *Commonwealth v. Thomas*, 450 Pa. 548, 301 A. 2d 359 (1973).

In the instant case, the appellant's statement to the court clearly indicated that he had a defense to the charges to which he was pleading guilty. He stated unequivocally that he did not hit the complaining witness, thereby impliedly denying the charge that he committed an assault. Under the Crimes Code[2], "[a] person who has indecent contact with another not his spouse, or cause such other to have indecent contact with him is guilty of indecent assault, a misdemeanor of the second degree, if:

"(1) he knows that the contact is offensive to the other person; . . ." 18 Pa. C.S. §3126.
Appellant's version of the incident is totally consistent with his innocence: he met the complaining witness in a

---

2. Act of Dec. 6, 1972, P.L. 1482, §1.

bar and ended up attempting to have sexual relations with her; initially, according to his statement, she made no objection to his touching her; only at some unexplained point did she begin to object and then, he desisted. Undoubtedly, the complaining witness would have testified to a different version of the same incident; the issue would then have been one of credibility. Nonetheless, the appellant's adherence to facts which, if proven, would require a verdict of not guilty renders his plea unintelligent.

Judgment of sentence is reversed.

VAN DER VOORT, J., concurs in the result.