420 A.2d 431

COMMONWEALTH of Pennsylvania

v.

**Tollie WATLINGTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 19, 1980.

Decided Sept. 22, 1980.

Tollie Watlington, pro se.

Marion E. MacIntyre, First Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal is from an order of the Court of Common Pleas, Dauphin County, dismissing, without a hearing, a *pro se* Post Conviction Hearing Act petition of appellant, Tollie Watlington.

On October 10, 1972, appellant, represented by privately–retained counsel, was convicted by a jury of murder of the first degree. Appellant was immediately sentenced to life imprisonment, though the Court informed appellant of his right to file post–verdict motions within seven days. No such motions were filed.

Appellant, then represented by an Assistant Public Defender of Dauphin County, filed a direct appeal with this Court, alleging that the trial court had erred in failing to give cautionary instructions regarding the trial testimony of his co–defendant, Thomas Epps. Finding that no objection had been made at trial and that no post–verdict motions had been filed, we affirmed. *Commonwealth v. Watlington*, 452 Pa. 524, 306 A.2d 892 (1973).

In January, 1979, appellant filed a *pro se* P.C.H.A. petition. A second attorney from the Dauphin County Public Defender's office was appointed; in an amended petition,

appellant alleged that trial counsel was ineffective for failing to: 1) file post–verdict motions, 2) object to certain trial improprieties (though no specific errors were mentioned), and 3) call certain witnesses who could have rebutted certain aspects of the Commonwealth's case. On March 26, 1979, the court dismissed appellant's petition without a hearing, finding that the issues had been waived because of appellant's failure to allege direct appeal counsel's ineffectiveness. No appeal was taken from the Court's ruling.

In September, 1979, appellant filed a second *pro se* P.C. H.A. petition, alleging that trial counsel was ineffective for failing to: 1) object to the trial court's charge on reasonable doubt, 2) object to the trial court's charge that a Commonwealth witness may well have been an accomplice, and 3) object to the trial court's charge in that the Court continuously highlighted the Commonwealth's contention that the homicide occurred during an attempted robbery. Appellant also alleged that direct appeal counsel was ineffective for failing to allege trial counsel's ineffectiveness and finally, that P.C.H.A. counsel was ineffective for failing to allege ineffectiveness on the part of direct appeal counsel. The Court dismissed appellant's petition without a hearing, finding that appellant's claims either were not cognizable under the act or had been finally litigated. This *pro se* appeal followed.

Appellant argues that the P.C.H.A. Court erred in dismissing his second P.C.H.A. petition without a hearing and without appointing counsel. We agree.

The Post Conviction Hearing Act provides:

"(a) For the purpose of this act, an issue is finally litigated if:

"(1) It has been raised in the trial court, the trial court has ruled on the merits of the issue, and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling; or

"(2) The Superior Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue and the

petitioner has knowingly and understandingly failed to avail himself of further appeals; or

"(3) The Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue.

"(b) For the purposes of this act, an issue is waived if:

"(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

"(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

"(c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure." Act of January 25, 1966, P.L. 1580 (1965), § 4, 19 P.S. § 1180–4 (Supp.1979–80).

None of the issues raised in the instant petition were raised in either appellant's direct appeal or his first P.C.H.A. petition. Thus, the instant P.C.H.A. Court's assertion that some of the issues were finally litigated is incorrect. Further, while the instant issues could have been raised on direct appeal or in the first P.C.H.A. petition, appellant has alleged extraordinary circumstances to justify the failure to raise them.

In *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973), we held that ineffective assistance of counsel amounts to "extraordinary circumstances" as called for in the Post Conviction Hearing Act, stating:

"Absent a knowing and intelligent waiver, Wideman was entitled to the assistance of counsel throughout the prosecution proceedings. And this means *effective* assistance of counsel; otherwise, the assistance of counsel would be just an empty gesture, and in effect a denial of counsel in the constitutional sense, and a deprivation of due process. The right to representation by counsel to be meaningful necessarily includes the right to effective rep-

resentation." *Id.*, 453 Pa. at 123, 306 A.2d at 896. (Emphasis in original).

Since appellant has alleged the ineffectiveness of all prior counsel for failing to raise the issues contained in the instant petition, the P.C.H.A. Court's ruling that said issues had been waived was erroneous.

As we have determined that the issues contained in the instant P.C.H.A. petition had been neither finally litigated nor waived, we are dealing with an uncounseled P.C.H.A. petition which was dismissed without a hearing and without the appointment of counsel. In *Commonwealth v. Mitchell*, 427 Pa. 395, 397, 235 A.2d 148, 149 (1967), we stated:

> "We pause to note that the *mandatory appointment requirement* is a salutary one and best comports with efficient judicial administration and serious consideration of a prisoner's claims. *Counsel's ability to frame the issues in a legally meaningful fashion insures the trial court that all relevant considerations will be brought to its attention.* As recognized by the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Post–Conviction Remedies § 4.4, at 66 (1967): 'It is a waste of valuable judicial manpower and an inefficient method of seriously treating the substantive merits of applications for post–conviction relief to proceed without counsel for the applicants who have filed pro se. . . . Exploration of the legal grounds for complaint, investigation of the underlying facts, and more articulate statements of claims are functions of an advocate that are inappropriate for a judge, or his staff.' " (Emphasis added).

See also, *Commonwealth v. Sangricco*, 490 Pa. 126, 415 A.2d 65 (1980); *Commonwealth v. Scott*, 469 Pa. 381, 366 A.2d 225 (1976); *Commonwealth v. Fiero*, 462 Pa. 409, 341 A.2d 448 (1975). As the instant proceedings were uncounseled, they were violative of *Mitchell* and its progeny.[1]

---

1. While appellant was given counsel to aid him in the original P.C.H.A. proceedings, said counsel was of no help, for by failing to allege the ineffectiveness of direct appeal counsel, if said allegation

The order of the Court of Common Pleas of Dauphin County is vacated and the matter is remanded to that court with instructions to appoint counsel to represent appellant in the filing of an amended petition and any further proceedings thereon.

LARSEN, J., files a concurring opinion in which EAGEN, C. J., joins.

FLAHERTY, J., files a dissenting opinion in which KAUFFMAN, J., joins.

LARSEN, Justice, concurring.

I find it very unfortunate that three attorneys could not successfully obtain any review of appellant's conviction, and that the first person to properly allege ineffectiveness in this case was appellant, a layman, proceeding *pro se*. It would indeed be a miscarriage of justice to hold that because of the actions of these counsel, appellant had now waived all issues, and I agree with the majority's disposition of this case.

I also share Mr. Justice Flaherty's belief that this Court should re–examine its standards for determining which issues will merit relief on collateral review. In fact, I would go farther and re–examine the standard for determining when a defendant had been denied effective assistance of counsel, regardless of whether the issue is raised collaterally or on direct appeal. This, however, is not the appropriate case for deciding those questions, since there has been no appointment of new counsel, no hearing to determine the merits and facts underlying appellant's claims, and the issue has neither been briefed nor argued.

EAGEN, C. J., joins in this concurring opinion.

FLAHERTY, Justice, dissenting.

Joined by my learned colleague, Mr. Justice Kauffman, I must emphatically dissent.

was even possible, *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974), appellant was denied a decision on the *merits* of his petition.

Analysis of this case properly begins with the observation that the issue of trial counsel's effectiveness was fully waived under *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). In *Hubbard* we stated:

> The rule that emerges from these cases [*Commonwealth v. Smallwood*, 465 Pa. 392 [350 A.2d 822] (1976); *Commonwealth v. Strachan*, 460 Pa. 407 [333 A.2d 790] (1975); *Commonwealth v. Twiggs*, 460 Pa. 105 [331 A.2d 440] (1975); *Commonwealth v. Dancer*, 460 Pa. 95 [331 A.2d 435] (1975)] is that ineffectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant.

*Id.*, 472 Pa. at 277, n.6, 372 A.2d at 695, n.6. As mentioned in the majority opinion, direct appeal counsel, who was different from trial counsel, did not raise the issue of trial counsel's ineffectiveness. The claim that trial counsel was ineffective, therefore, was waived.

In January of 1979, when appellant filed a *pro se* petition under the PCHA, counsel was appointed for him. Appointed counsel amended the *pro se* petition and alleged the ineffectiveness of trial counsel. However, he did not allege the ineffectiveness of counsel for appellant on direct appeal. The court below, without hearing, dismissed the petition and no appeal of the dismissal was taken to this Court.

Section 4 of the Post Conviction Hearing Act[1] provides that an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised on appeal. The act further provides that there is a rebuttable presumption that failure to appeal a ruling is a knowing and understanding failure, and appellant has not rebutted this presumption. It is clear, therefore, that the issue of appellate counsel's effectiveness has been waived because no appeal of that ruling was taken to this Court.

In his present PCHA petition, petitioner again asserts that trial counsel was ineffective on three new theories. The

1. Act of Jan. 25, 1966, P.L. (1965) 1580, eff. March 1, 1966, 19 P.S. § 1180–4. (Supp.1979–80).

majority opinion correctly notes that none of these issues were raised in either appellant's direct appeal or his first PCHA petition. Majority opinion at 433. Furthermore, all of these issues were available and could have been presented in earlier proceedings. Section 5(b) of the Post Conviction Hearing Act provides in part:

> The failure to raise any such issue in such petition shall be deemed a waiver of any right to future presentation of another petition containing grounds for relief that were available and could have been presented.

19 P.S. § 1180–5(b). (Supp.1979–80). In short, failure to present all theories at the earliest possible time constitutes a waiver. *Cf. Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975).

Appellant also asks us to review the issue of the effectiveness of every counsel who has represented him. Were we to address these issues, we would be ignoring the mandates set forth in the *Hubbard* case, discussed above, and also in *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975), and there would never be any finality to post–trial proceedings.

In *Dancer* we stated:

> Our Post Conviction Hearing Act and the principles of judgment finality mandate that claims of ineffectiveness of counsel may only be raised in PCHA proceedings 1) where petitioner is represented on appeal by his trial counsel, for it is unrealistic to expect trial counsel on direct appeal to argue his own ineffectiveness, 2) where the petitioner is represented on appeal by new counsel, but the grounds upon which the claim of ineffective assistance are based do not appear in the trial record, 3) where the petitioner is able to prove the existence of other 'extraordinary circumstances' justifying his failure to raise the issue, Post Conviction Hearing Act § 4(b)(2), 19 P.S. § 1180–4(b)(2) (Supp.1974) or 4) where the petitioner rebuts the presumption of 'knowing and understanding failure.' Post Conviction Hearing Act § 4(c), 19 P.S. § 1180–4(c) (Supp.1974).

*Id.,* 460 Pa. at 100–101, 331 A.2d at 438. The majority holds that appellant's claim of ineffective assistance of counsel is, under the case law and within the meaning of § 1180–4(b)(2) "extraordinary circumstances" which justify failure to raise the issue of ineffectiveness at the earliest possible time. Majority opinion at 433.

This holding is contrary to the requirement in *Hubbard* and § 1180–5(b) that ineffectiveness of counsel be raised at the earliest possible time. Further, the majority position defeats the principle of finality of judgment, reintroduces covertly the principle of fundamental error which was expressly abrogated in *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), and encourages the filing of literally endless PCHA petitions by the same petitioner.

It is time for the Court to realize that we have inadvertently created a monster of inefficiency and judicial wastefulness in our past interpretations of the PCHA. That convicted prisoners, as a routine matter, should file endless petitions was never contemplated under the PCHA. Yet that is what the majority today approves.

Section 5(b) of the Act provides:

Any person desiring to obtain relief under this act shall set forth all of his then available grounds for such relief for any particular sentence he is currently serving in such petition *and he shall be entitled to only one petition for each such crime. . . .*

19 P.S. § 1180–5(b). (Emphasis added).

Further, it was only six years ago that we expressly overruled the doctrine of fundamental error in criminal trials. As we stated in *Commonwealth v. Clair, supra* :

The trial judge must be given an opportunity to rectify errors at the time they are made. As we have often said before: '[A] party may not remain silent and take chances on a verdict and afterwards complain of matters which, if erroneous, the Court would have corrected.' *Commonwealth v. Marlin*, 452 Pa. 380, 382, 305 A.2d 14, 16 (1973). *See also, Commonwealth v. Morgan*, 448 Pa. 494, 295 A.2d 77 (1972).

> Accordingly no longer will allegations of basic and fundamental error serve to enable parties in criminal matters to seek reversal on alleged errors not properly raised below.

*Id.*, 458 Pa. at 423, 326 A.2d at 274. Yet the petition in this case is no more and no less than a claim of fundamental error and should not be entertained unless we wish to overrule *Clair.*

The basic issue in this case, not directly addressed by the majority, is whether we should limit collateral review of the same criminal conviction or permit an unlimited number of collateral attacks filed under the PCHA. We are called upon to reconcile a conflict in the law on this question. Cases cited by the majority, admittedly, can be read to reach the result of permitting unlimited PCHA appeals; but the clear mandate of *Hubbard* and *Clair* and the policy behind the act require a different result.

As the majority would have it, virtually *any* claim, no matter how insignificant, is cognizable on collateral review as long as that claim is cloaked with an allegation of ineffectiveness of counsel. No claim may be truly waived, nor may any criminal conviction become final, subsequent counsel may always generate new litigation by alleging the ineffectiveness of his predecessor. The effects of such practice are extremely serious: it vitiates the waiver doctrine and prolongs criminal litigation interminably.[2] More significantly, because the focus of the inquiry at PCHA is rarely relevant to the guilt or innocence of the defendant, public confidence in our criminal justice system has been undercut.

**2.** The difficulty of locating evidence when a new trial is awarded years after a criminal conviction is obtained is fully discussed by Judge Friendly in Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 147 (1970). *See Commonwealth v. Slavik,* 449 Pa. 424, 432, 297 A.2d 920, 924 (1972):

> It is evident that the orderly administration of justice requires that a criminal controversy, like any other litigation, some day must come to an end.

*See also Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), (Stevens, J. concurring); Bator, *Finality in the Criminal Law,* 76 Harv.L.Rev. 441 (1963).

Ignoring guilt or innocence not only invites scathing attacks on the judiciary and the entire judicial system, engendering cynicism and suspicion on the part of ordinary citizens, but completely misconstrues the purpose of the act. The purpose of the act was to facilitate, in certain circumstances, additional review of convictions, not to fill the leisure hours of prisoners by permitting them to file endless post-conviction petitions. In fact, as mentioned above, the act specifically provides that a petitioner is entitled to only *one* petition.

In addition, this Court should not engage in the meaningless gesture of finding an issue waived, knowing full well that we will see the claim again, raised in an ineffectiveness context. Accordingly, I would limit collateral review to claims (1) constituting a denial of due process or fundamental fairness that (2) significantly implicate the truth determining process.[3] Thus, defense counsel's waiver of an issue, *whether for reasons of strategy or negligence*, would not constitute ineffectiveness cognizable in a second PCHA petition unless the issue waived met this two pronged test.

On subsequent PCHA petitions, our interest is to prevent the incarceration of innocent persons, not, as at earlier stages, to prevent law enforcement agencies from abusing their authority. *Stone v. Powell*, 428 U.S. 465, 484–496, 96

---

**3.** This problem has been recognized in the past. *Kaufman v. United States*, 394 U.S. 217, 235, 242, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) (Black, J., dissenting):

> [G]uilt or innocence is at least one of the vital considerations in determining whether collateral relief should be available to a convicted defendant.

> \* \* \* \* \* \*

> In collateral attacks . . . I would always require that the convicted defendant raise the kind of constitutional claim that casts some shadow of a doubt on his guilt.

See Friendly, 38 U.Chi.L.Rev., *supra* at 142:

> [C]onvictions should be subject to collateral attack only when the prisoner supplements his constitutional plea with a colorable claim of innocence.

See *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), *reh. denied*, 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1977). (Fourth amendment claims which do not implicate the truth determining process are no longer cognizable on Federal collateral review).

S.Ct. 3037, 3047–3053, 49 L.Ed.2d 1067 (1976), *reh. denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1977). It may be that a person convicted of a crime has had several lawyers and that the performance of these lawyers was in some respect imperfect. But a criminal defendant is not entitled to a perfect trial and it seems likely that if the accused were to be represented by fifty lawyers, some aspect of the performance of each could be decried as "ineffective". Both the accused and society are entitled to a final determination, an end to the proceedings that will be opened only in the case of a colorable due process claim significantly implicating the truth determining process, which, were it unaddressed by the Court, could have the effect of imprisoning an *innocent* person.[4] In short, a second post–conviction appeal should be the *exception,* not, as is presently the case, the *rule.*

When applied to the *instant case,* this approach would preclude further review. Appellant has raised three claims in an ineffectiveness context regarding the jury instructions

---

**4.** *See* concurring and dissenting opinion of Mr. Chief Justice Bell in *Commonwealth v. Maroney,* 427 Pa. 599, 614, 235 A.2d 349, 357 (1967):

> As so frequently happens in recent habeas corpus and recent post–conviction proceedings and appeals therefrom, there is no doubt of defendant's guilt–indeed, in most of them, defendant relies solely upon recently created legal technicalities and does not even allege his innocence.

A related consideration–that we should not create processes whereby persons guilty of crimes can escape just condemnation–is raised by Paul Bator, *Finality in Criminal Law,* 76 Harv.L.Rev. 441, 452 (1963):

> [W]e should at least tentatively inquire whether an endless reopening of convictions, with its continuing underlying implication that perhaps the defendant can escape from corrective sanctions after all, can be consistent with the aim of rehabilitating offenders. The first step in achieving that aim may be a realization by the convict that he is justly subject to sanction, that he stands in need of rehabilitation; and a process of reeducation cannot, perhaps, even begin if we make sure that the cardinal moral predicate is missing, if society itself continuously tells the convict that he may not be justly subject to reeducation and treatment in the first place. The idea of just condemnation lies at the heart of the criminal law, and we should not lightly create processes which implicitly belie its possibility.

given at his trial, none of which, even if true, would constitute a due process denial that significantly implicates the truth determining process at trial. Accordingly, the claims should not be cognizable at PCHA, and the lower court's dismissal of this petition is proper.

KAUFFMAN, J., joins this dissenting opinion.