**UNITED STATES of America ex rel. Edward CHRUSCIAL**

v.

**Gilbert A. WALTERS.**

**Civ. A. No. 73–574.**

United States District Court,
W. D. Pennsylvania.

Oct. 10, 1973.

Harry Swanger, Pittsburgh, Pa., for plaintiff.

Robert W. Duggan, Dist. Atty., Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

The Petitioner in this case, an inmate at the Correctional Institution at Pittsburgh, Pennsylvania, filed for a Writ of Habeas Corpus. Petitioner had entered a plea of guilty to a charge of murder on March 5, 1968, and was sentenced to a term of from ten to twenty years imprisonment by the Honorable Ralph H. Smith, Jr.

In support of his Petition, Mr. Chruscial alleges:

"Following the plea to murder, the Court held a hearing to determine the degree of guilt. During said hearing, I testified that I did not intend to shoot my 'wife', but that the killing was accidental. So the trial Court, after hearing my testimony, should have ordered the guilty plea withdrawn and a plea of not guilty entered."

As the grounds for his allegation that he is being held in custody unlawfully, Petitioner states the fact that his guilty plea was not knowingly and intelligently entered, because:

"I testified to a perfect alibi for a defense which the Trial Court should have rejected the plea of guilty. And the Trial Court heard testimony from a Robbery charge when he considered my degree of the murder charge."

At the filing of the Petition for Writ of Habeas Corpus, the Commonwealth filed a Motion to Dismiss the Petition contending:

"Relator raises only one issue in the instant petition: He claims his plea of guilty was not knowingly and intelligently entered because his testimony made out a defense that the killing was accidental, and under the authority of United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3d Cir. 1968), the trial court should have rejected his guilty plea."

The Commonwealth then argues that this precise issue was initially raised by Chruscial and decided against him when

he sought post-conviction relief in the state courts.

After receipt of the Petition for Writ of Habeas Corpus this Court entered an Order on July 27, 1973, granting a Rule on the Respondent to show cause why a hearing should not be held, Rule returnable within twenty (20) days after service. It was further ordered that the District Attorney or his representative should file an answer to the allegation of the petition within twenty (20) days from the date of service of the Rule. In addition, it was ordered that after filing of the answer, the Clerk should obtain the state court records, including the records relating to Petitioner's plea of guilty, degree of guilt hearing and sentencing at 26 September Term 1967, Oyer and Terminer of Allegheny County, together with all papers relating to hearings and the court's opinion and the record of the appeal to the Supreme Court of Pennsylvania. It was pursuant to this Order that the Commonwealth's Motion to Dismiss the Petition was filed. The Clerk also furnished the Court with the records as set out in the above mentioned Order.

On September 4, 1973, Harry S. Swanger, Esquire, and Samuel Vitarro, Esquire, attorneys at this Bar entered their appearance on behalf of the Petitioner, Edward Chruscial. After the receipt of the Commonwealth's Motion, a hearing was ordered on the matter for September 4, 1973 but on request of counsel for the Petitioner, consented to by the Petitioner, the hearing was continued until October 1, 1973.

A review of the records in this case shows that Petitioner was indicted at Nos. 26 and 27 of September Term 1967 in the Courts of Oyer and Terminer of Allegheny County, Pennsylvania. At No. 26, there were counts charging murder and voluntary manslaughter, and No. 27 contained a single count of involuntary manslaughter. He was represented by Thomas Harper, Esquire, of the Public Defender's Office who is presently a Judge of the Court of Common Pleas of Allegheny County. During this representation, he waived his right to trial by jury and entered a plea of guilty. On March 4, 1968, testimony was taken before the Honorable Ralph H. Smith, Jr., for the purpose of determining the degree of guilt. Judge Smith set the degree of guilt at murder in the second degree on March 5, 1968 and imposed a term of imprisonment of not less than ten nor more than twenty years. No post trial motions were filed nor was an appeal taken.

On March 16, 1970, Petitioner filed a petition pursuant to the Post Conviction Hearing Act alleging he was entitled to relief because of the "abridgement of a right guaranteed by the constitution or laws of this state or by the constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right".

In this Petition, the facts given in support of the alleged error were as follows:

1. "That petitioner was not informed, by the trial court nor trial counsel of his right to court-appointed appellate counsel to take his appeal to the appellate courts! Nor did petitioner have any personal knowledge of the existence of said constitutional right to appeal. Please see Title 12 P.S. Section 1136."

2. "Petitioner also at this time wishes to invoke the Doctrines of Estopel."

3. "The notes of my trial shows that I was not informed of any rights had either been exercised or waived. I rely fully upon those notes."

4. "The issues which I have raised in the petition have not been finally litigated or waived because: They have just been brought to my attention and are therefore being raised for the first time." (Sic, errors in original document)

At the post-conviction hearing before Judge Smith, in addition to other matters raised in this petition, the Court permitted counsel for Petitioner to raise the issues of involuntariness of the

guilty plea and ineffective assistance of counsel. Thereafter, on January 29, 1971, Judge Smith filed his Opinion and Order denying Petitioner the post-conviction relief he had sought but granting him the right to file an appeal from judgment of sentence *nunc pro tunc.*

An appeal was taken to the Supreme Court of Pennsylvania challenging the validity of the guilty plea on the claim that it should have been rejected by the court, because it was accompanied by testimony by the Petitioner during the hearing to determine the degree of guilt which constituted a complete defense to the charge. In the Opinion as filed (reported at Commonwealth v. Chruscial, 447 Pa. 17, 288 A.2d 521 (1972)) the Supreme Court affirmed the conviction holding that the testimony of the Petitioner, that he pointed a gun at the victim only to scare her and that the gun went off when it was hit by the victim, did not establish an excusable homicide or homicide by misadventure, and, therefore, supported the guilty plea.

The Petitioner in this case relies on United States ex rel. Crosby v. Brierley, 404 F.2d 790 (3d Cir. 1968). We believe this reliance on the Brierley case is totally misplaced. In that habeas corpus proceeding, Judge Aldisert held that the defendant's plea of guilty to murder was not entered with requisite understanding which is necessary to satisfy due process requirements where it appeared that he had earlier switched pleas, the trial court had failed to conduct an inquiry into his understanding of the nature and consequences of his plea, trial counsel was unfamiliar with criminal law and procedure and failed to explain the nature of the plea, and the defendant stated before sentence, and later, that he had acted in self-defense.

We approach our analysis of the Petitioner's contentions, in order to determine whether the plea was made voluntarily, after proper advice, and with a full understanding of the consequences. These are the ingredients which the due process requirements of the Fourteenth Amendment hold before us. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). Apparently, the Petitioner has raised as the only contention the fact that in his hearing to determine the degree of guilt, since he testified he did not intend to shoot his wife but that the killing was accidental, that the trial court then should have ordered the guilty plea to be withdrawn and a plea of not guilty to be entered. We have independently examined the record of this hearing and agree entirely with the Supreme Court of Pennsylvania in their analysis of the situation as contained in the opinion of Justice Eagen:

"The prosecution stemmed from the fatal shooting of a Mrs. Zenuh with whom Chruscial had lived on-and-off for a period of two years.

Before accepting the guilty plea, the court questioned Chruscial to make certain he understood the nature of the charge, and that the plea was voluntarily entered and with a knowledge of its impact. No questions were asked concerning the details of the shooting. After the Commonwealth introduced its testimony as to the circumstances of the fatal event, Chruscial testified on his own behalf. The significant portions of his testimony are as follows.

On the day involved, Chruscial consumed a quantity of intoxicants; during the afternoon he borrowed a shotgun and some shells from his brother because he intended to hunt groundhogs the next day; that evening he went to Mrs. Zenuh's residence to seek reconciliation and he took the gun along to scare her; as he approached the front entrance of Mrs. Zenuh's residence, she came out and proceeded up the street without speaking to him; when she entered a neighbor's house he followed; inside this house he set the gun down and tried to talk to her but she only sneered at him; he then picked up the gun 'to keep her from getting around the table so she wouldn't run,' but 'she started to run around the table. . . . until

she could run out of the house'; Mrs. Zenuh then said 'get the gun out of here and it went off.' Chruscial specifically stated he did not 'want' to kill Mrs. Zenuh, but merely 'to frighten her' and was not 'conscious' of pulling the trigger. He also said he did not 'shoot' the gun but it 'went off' when it was 'hit' by Mrs. Zenuh. The crucial question is, did Chruscial's testimony establish an accidental killing which would be a complete defense to the killing. We conclude not.

In Commonwealth v. Flax, 331 Pa. 145, 156–157, 200 A. 632, 637–638 (1938), we pertinently said:

Homicide by misadventure (which is excusable) is the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. "Three elements enter into the defense of excusable homicide by misadventure: (1) The act resulting in death must be a lawful one. (2) It must be done with reasonable care and due regard for the lives and persons of others. (3) The killing must be accidental and not intentional, or without unlawful intent, or without evil design or intention on the part of the slayer. All these elements must concur and the absence of any one of them will involve in guilt. Even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state or unlawfully striking another with an intent to hurt, although not with an intent to kill, or driving an automobile at an unlawful rate of speed." 30 C. J., page 88, sec. 269.'

See also, Commonwealth v. Pavillard, 421 Pa. 571, 220 A.2d 807 (1966).

Accepting the testimony of Chruscial as true, it is clear it did not establish an excusable homicide or homicide by misadventure. To be such, the act resulting in death must, inter alia, be lawful. Pointing a firearm at another human being, even to scare, is not a lawful act in Pennsylvania.

Judgment affirmed."

In light of the above discussion it becomes perfectly clear that the Brierley case is inapplicable to the situation in the instant case. Here, there was an adequate record as to the factual basis upon which the plea was entered and while we have looked at the totality of circumstances, we must conclude that Chruscial understood the nature and consequences of his plea and that the plea was voluntarily given after proper advice. Where, as here, the full record is available and an independent review is made, an evidentiary hearing is not necessary. Griswold v. Eyman, 452 F.2d 923 (9th Cir. 1971); Little v. Rhay, 439 F.2d 765 (9th Cir. 1971).

Counsel at the argument, for the first time, raised the contention that the petitioner was incompetent at the time of his post-conviction hearing and unable to assist in his defense. His argument, in effect, is that the petitioner had been committed on August 20, 1970 to Farview State Hospital where he was held until March 11, 1971. The post-conviction hearing for the petitioner was held on January 6, 1971 and he was taken from Farview to the hearing and returned to that institution upon completion of the hearing. Counsel then argues that since the petitioner was a resident of Fairview it must be assumed that he met the standard of "mentally disabled persons" and thus was unable to present his claim at the post-conviction hearing as effectively as he should have. Citing Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). That case is clearly not applicable, however, for involved in that decision was the question of whether or not the record supported a finding of competency to stand trial. However, we do not reach the question of the competency of the petitioner in this case at the time of the post-conviction hearing, for the

Court granted the petitioner's request for leave to appeal *nunc pro tunc* from the prior conviction and there is no suggestion by counsel that petitioner was not competent to stand trial at the time of the hearing on the question of the degree of guilt. Therefore, this contention cannot stand.

In light of all the above discussion, the Motion to Dismiss Petition for Writ of Habeas Corpus will be granted and an appropriate order entered.