## Commonwealth *v.* Alexander, Appellant.

Submitted March 13, 1967. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*James B. Alexander,* appellant, in propria persona.

*Burton D. Fretz* and *Alan J. Davis,* Assistant District Attorneys, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 30, 1967:

This is an appeal from the Order of the Court of Quarter Sessions of Philadelphia County dismissing Alexander's petition for relief under the Post Conviction Hearing Act.*

Alexander was tried for murder and related charges on June 28, 1954. He pleaded guilty to and the Court found him guilty of all charges, on which he received a prison sentence of 20½ to 41 years.** Eleven years later he filed a petition for a writ of habeas corpus. That petition was dismissed and Alexander then filed this petition for relief under the Post Conviction Hearing Act. This petition was also dismissed and from the Order dismissing this petition Alexander has appealed to this Court.

Alexander contends that his convictions were invalid because he was proceeded against, prosecuted and sentenced by a "religious establishment" in violation of the First and Fourteenth Amendments to the Constitution of the United States. He further contends that his convictions should be invalidated because the Judge and the prosecuting attorney took an oath of office.

Alexander's contentions are not only devoid of any legal merit, they are absolutely ridiculous. If his theory of the law and his interpretation of the Federal and the State Constitution were accepted and his conviction invalidated, it would (as he admits) nullify every criminal conviction ever obtained in the Com-

---

* Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1-1180-14.

** The record does not disclose what sentences were imposed on each bill of indictment.

monwealth of Pennsylvania, and would make a mockery of every oath taken by every Judge and every public official from the President of the United States to a magistrate.

It is a matter of common knowledge that all Governors, Senators, Representatives, and the President of the United States and all State and County officers, as well as all members of the Judiciary—from the highest to the lowest in the Land—take an oath of office (or affirm), in which, in slightly different language, they solemnly swear to support, obey and defend the Constitution of the United States and, if a State or County official also the Constitution of Pennsylvania.

*Com. ex rel. Brown v. Rundle,* 424 Pa. 505, 227 A. 2d 895, is almost identical with the instant case and, if authority were needed, which it isn't, is controlling. In that case, the Court said (pp. 506-7, 508) : "Brown contends that his conviction and sentence for second degree murder is void because he was '. . . proceeded against, prosecuted and sentenced by a religious establishment. . . .' He apparently argues that his conviction violates the Federal Constitution [and also the Constitution of Pennsylvania] because the Pennsylvania Constitution [Article VII, §1] permits [or requires] a Judge to take an oath.

. . .

"The First Amendment to the United States Constitution provides, inter alia, 'Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof . . .' The meaning of 'an establishment of religion' is analyzed and interpreted in the recent case of Abington School District v. Schempp, 374 U.S. 203.

"Brown's contentions are . . . ridiculous."

While further analysis or comment is unnecessary, we deem it appropriate to quote from page 213 of the

Court's Opinion in the *Abington School District* case: ". . . In Zorach v. Clauson, 343 U.S. 306, 313 (1952), we gave specific recognition to the proposition that '[w]e are a religious people whose institutions presuppose a Supreme Being.' The fact that the Founding Fathers believed devotedly that there was a God and that the unalienable rights of man were rooted in Him is clearly evidenced in their writings, from the Mayflower Compact to the Constitution itself. This background is evidenced today in our public life through the continuance in our oaths of office from the Presidency to the Alderman of the final supplication, 'So help me God.' Likewise each House of the Congress provides through its Chaplain an opening prayer, and the sessions of this Court are declared open by the crier in a short ceremony, the final phrase of which invokes the grace of God. Again, there are such manifestations in our military forces, where those of our citizens who are under the restrictions of military service wish to engage in voluntary worship. Indeed, only last year an official survey of the country indicated that 64% of our people have church membership, Bureau of the Census, U. S. Department of Commerce, Statistical Abstract of the United States (83d ed. 1962), 48, while less than 3% profess no religion whatever. Id., at p. 46. It can be truly said, therefore, that today, as in the beginning, our national life reflects a religious people who, in the words of Madison, are 'earnestly praying, as . . . in duty bound, that the Supreme Lawgiver of the Universe . . . guide them into every measure which may be worthy of his blessing. . . .' "

Order affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.