432 A.2d 182

**COMMONWEALTH of Pennsylvania,**

v.

**James Bernard ALEXANDER, a/k/a Bernard Alexander.**

Supreme Court of Pennsylvania.

Submitted Jan. 19, 1981.

Decided July 8, 1981.

Arthur Henry James (Court-appointed), Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Garrold Tennis, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

Almost twenty-seven years ago, on June 28, 1954, appellant James Alexander, pleaded guilty to murder generally and to three counts of aggravated assault and assault with intent to kill.[1]  He was sentenced by the Honorable Joseph

1.  The evidence at the degree of guilt hearing disclosed that on June 5, 1953, appellant and a friend precipitated a brawl at a dance hall in

Sloan, Court of Common Pleas of Philadelphia County, to ten to twenty years for murder of the second degree and to three and one-half to seven years for each aggravated assault count. The sentences were to run consecutively, and totalled twenty and one-half to forty-one years. Appellant did not file a direct appeal from the judgments of sentence. However, he has filed no less than six petitions for relief under the Post-Conviction Hearing Act, Act of January 25, 1966, 19 P.S. §§ 1180–1—1180–12.

In his first PCHA petition, filed January 23, 1966, appellant asserted the judgments of sentence were invalid because he was prosecuted and sentenced by a "religious establishment", in violation of the First and Fourteenth Amendments to the United States Constitution, because the prosecutor and the judge swore oaths of office which asserted a belief in God. This petition was denied without a hearing, and the denial was affirmed by this Court in *Commonwealth v. Alexander*, 426 Pa. 360, 231 A.2d 290 (1967).

The second PCHA petition was filed four weeks later on July 20, 1966. This petition asserted that perjured testimony had been introduced at the coroner's inquest; that an unsworn statement had been read into evidence at the guilty plea hearing; that the complainant did not testify at the hearing and the appellant could not, therefore, cross-examine him; that the court refused to hear a certain defense witness; that the court "commented that his attorneys did business for the guilty plea"; and that appellant was denied effective assistance of counsel. A third petition was filed November 16, 1966 alleging that the guilty plea was induced involuntarily and unknowingly and that appellant was denied his right to appeal from the guilty plea. The record is unclear as to the exact disposition of the second and third petitions. However, appellant's brief indicates that a Su-

Philadelphia by accosting two young ladies. One of the lady's boyfriend and her brother rushed to their aid. Appellant pulled a handgun and shot five bullets into the crowd, wounding one of the rescuers and three others. An innocent bystander, sixteen-year old James Jenkins, died from wounds inflicted by appellant.

preme Court memorandum of December 29, 1966 determined that the original (second) petition had been abandoned and that review of the third was premature. Brief for Appellant at 3.

July 24, 1968 witnessed the filing of appellant's fourth petition. The claims therein included: denial of right to appeal; the unlawful inducement of the guilty plea; the "perjured testimony" at the coroner's inquest; the "unsworn testimony" at the guilty plea; and the court's refusal to hear a certain witness for the defense. A full evidentiary hearing was held on December 18, 1968, following which the Honorable Joseph Sloan denied the petition. Again, appeal was brought to this Court and, again, we affirmed. *Commonwealth v. Alexander*, 435 Pa. 33, 255 A.2d 119 (1969).

Petition number five—July 9, 1969. Appellant there asserted his sentence had been incorrectly computed. Another hearing was held, on March 18, 1970, and the relief requested—a recomputed sentence—was granted.

This brings our story almost up to date. Appellant filed a motion to withdraw guilty plea on October 12, 1978 (more than 24 years after it was entered) and a motion to vacate sentence on December 12, 1978. These motions were consolidated and treated as another PCHA petition—his sixth to date! This petition alleged: appellant's "arrest was invalid as he was not arraigned until nine hours after his custody and was not given an opportunity to speak to his attorney during this time"; that he was denied an opportunity to present a witness; that he was denied an opportunity to cross-examine and confront the complainant; that he was denied effective assistance of counsel; that the guilty plea was invalid; that he was denied the opportunity to testify in mitigation of his sentence; that there was no voluntary or knowing waiver of his "constitutional rights"; and that the sentence was excessive and severe under the circumstances. The Honorable Edward Blake denied the petition without a hearing on the grounds that all of appellant's claims had either been finally litigated or waived. Mr. Alexander now appeals that denial to this Court, asserting the PCHA court

(the latest one) has abused its discretion in denying the petition without hearing.

The starting point in any review or consideration of multiple PCHA petitions must be section 1180–5(b) of the PCHA which provides:

> Any person desiring to obtain relief under this act shall set forth all of his then available grounds for such relief for any particular sentence he is currently serving in such petition and *he shall be entitled to only one petition* for each such crime. The failure to raise any such issue in such petition *shall be deemed* a waiver of any *right* to future presentation of another petition containing grounds for relief that were available and could have been presented. 19 P.S. § 1180–5(b). (emphasis added)

Thus, the PCHA explicitly contemplates a *single* post-conviction proceeding in no uncertain terms. As Mr. Justice Flaherty pointed out in his dissenting opinion in *Commonwealth v. Watlington,* 491 Pa. 241, 249–250, 420 A.2d 431, 437 (1978), joined by Mr. Justice Kauffman, "a second post-conviction appeal should be the *exception,* not, as is presently the case, the *rule."*

Furthermore, section 1180–9 provides the PCHA court may deny a hearing on a petition if the petitioner's claim is "patently frivolous and is without a trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held. . . ." Clearly then, the PCHA contemplates that a second (or greater number of) petition(s) *is* the exception and the decision whether to dismiss such petitions without a hearing lies in the sound discretion of the PCHA court whose determination in this regard will be affirmed absent abuse. *See Commonwealth v. Sherard,* 483 Pa. 183, 394 A.2d 971 (1978) (right to hearing not absolute) and *Commonwealth v. Bennett,* 472 Pa. 314, 372 A.2d 713 (1977).

In this appeal, Mr. Alexander argues that the PCHA court (the latest one) did abuse its discretion in denying a hearing

on and dismissing his sixth petition the court holding all issues had been either finally litigated or waived. We emphatically disagree with Mr. Alexander's argument.

A. Issues Deemed Finally Litigated

Section 1180–3 provides that, to be eligible for relief under the PCHA, a person must prove that his conviction resulted from one or more of 13 reasons enumerated in subsection (c).[2] Subsection (d) further requires petitioner to prove that "the error resulting in his conviction and sentence has not been finally litigated or waived." Section 1180–4 sets forth the definition of "finally litigated":

(a) For the purposes of this act, an issue is finally litigated if:

(1) It has been raised in the trial court, the trial court has ruled on the merits of the issue, and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling; or

2. These reasons are as follows:

(1) The introduction of evidence obtained pursuant to an unlawful arrest;

(2) The introduction of evidence obtained by an unconstitutional search and seizure;

(3) The introduction of a coerced confession into evidence;

(4) The introduction into evidence of a statement obtained in the absence of counsel at a time when representation is constitutionally required;

(5) The infringement of his privilege against self-incrimination under either Federal or State law;

(6) The denial of his constitutional right to representation by competent counsel;

(7) A plea of guilty unlawfully induced;

(8) The unconstitutional suppression of evidence by the State;

(9) The unconstitutional use by the State of perjured testimony;

(10) The obstruction by State officials of petitioner's right of appeal;

(11) His being twice placed in jeopardy;

(12) The abridgement in any other way of any right guaranteed by the constitution or laws of this State or the constitution or laws of the United States including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right; or

(13) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

(2) The Superior Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue and the petitioner has knowingly and understandingly failed to appeal the trial court's ruling; or

(3) The Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue.

This Court has previously dealt with some of Mr. Alexander's prior petitions which raised several of the *exact same* issues now dragged before us for yet another go-round. These finally litigated issues are the denial of the opportunity to cross-examine and to confront his accuser (these issues, raised in the second petition, were deemed abandoned by this Court, according to appellant's brief) and the validity of the guilty plea (raised and denied in the fourth proceeding and affirmed by this Court on direct appeal). It is incredibly impudent of Mr. Alexander to come before this Court at this time to assert these same stale allegations of error. Of course, the PCHA court did not abuse its discretion in denying a hearing on these issues.

B. Issues Deemed Waived

The remaining issues were deemed waived by the lower court. Section 1180–4 provides:

(b) For the purposes of this act, an issue is waived if:

(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

(c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

Certainly the remaining issues of Mr. Alexander's sixth petition have long been waived by his failure to raise them in the preceding five petitions. However, appellant seeks to

circumvent the effect of such waiver by bemoaning the effectiveness of counsel at his first, fourth and fifth PCHA proceedings and equating such alleged ineffectiveness with "extraordinary circumstances" within the meaning of section 1180–4(b)(2). Before we determine whether appellant has alleged such "extraordinary circumstances", it is necessary to explore the role that ineffective assistance of counsel allegations have played in prior similar determinations.

It is true that certain cases of this Court have spoken in rather broad terms which suggested that an ineffective assistance assertion alone constitutes such extraordinary circumstances. *Commonwealth v. Watlington*, 491 Pa. 241, 245, 420 A.2d 431, 433 (1980) ("*Since* appellant has alleged the ineffectiveness of all prior counsel for failing to raise the issues contained in the instant petition, the PCHA court's ruling that said issues had been waived was erroneous."); *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973); *Commonwealth v. Waddy*, 463 Pa. 426, 345 A.2d 179 (1975); *see Commonwealth v. Valesquez*, 244 Pa.Super. 327, 368 A.2d 745 (1976). However, it cannot be disputed that, as the PCHA requires a petitioner to set forth all available grounds for relief in *one petition*, § 1180–5(b), and as the PCHA creates a rebuttable presumption that failure to appeal a ruling or preserve an issue is a knowing and understanding waiver, § 1180–4(c), it would defeat the intent of the General Assembly to elevate a mere assertion of ineffectiveness to the status of "extraordinary circumstances" permitting review of the substantive issues which were not raised in the first PCHA petition. Surely much more was envisioned by the drafters.

To the extent the courts, this one included, have permitted the utterance of the magic words "ineffective assistance of counsel" to establish an automatic right to bring multiple PCHA proceedings, "the system needs revision to prevent abuse by prisoners, a waste of the precious and limited resources available for the criminal process, and public disrespect for the judgments of criminal courts." Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judg-*

*ments,* 38 U.Chi.L.Rev. 142, 172 (1970). Or as Justice Flaherty accurately phrased it, "[t]he purpose of the [PCHA] was to facilitate, in certain circumstances, additional review of convictions, not to fill the leisure hours of prisoners by permitting them to file endless post-conviction petitions." *Commonwealth v. Watlington, supra,* 491 Pa. at 251, 420 A.2d at 436. To hold that "*any* claim, no matter how insignificant, is cognizable on collateral review as long as that claim is cloaked with an allegation of ineffectiveness of counsel," *id.,* 491 Pa. at 250, 420 A.2d at 436, would further the proliferation of needless and wasteful multiple post-conviction proceedings.

Justice Flaherty used this illustration: "a criminal defendant is not entitled to a perfect trial and it seems likely that if the accused were to be represented by fifty lawyers, some aspect of the performance of each could be decried as 'ineffective.' " *Id.,* 491 Pa. at 252, 420 A.2d at 437. This example might be hyperbole in terms of the numbers of attorneys, yet the principle it illustrates is sound and is highlighted in the instant petition as the appellant asserts the ineffectiveness of the various counsel at his first, fourth and fifth PCHA proceedings.

While we are in complete accord with Justices Flaherty and Kauffman in spirit and share their dissatisfaction with such a potentially limitless post-conviction proceeding system, nevertheless we cannot subscribe to their alternative. In *Watlington,* the dissent stated "[a]ccordingly, I would limit collateral review to claims (1) constituting a denial of due process or fundamental fairness that (2) significantly implicate the truth determining process." *Id.,* 491 Pa. at 251, 420 A.2d at 436. This approach probably more closely approximates the intent of the legislature than does the open-ended "ineffective assistance equals extraordinary circumstances" approach, but it suffers from one of its drawbacks—inflexibility. It was inflexibility that caused this author to refrain from joining Justice Flaherty's dissenting opinion in *Watlington.*

The underlying issues in *Watlington* involved the trial court's instructions to the jury. Counsel had failed to object to the instructions at trial or to raise the alleged errors on post-verdict motions. On appeal, new counsel asserted the substantive issues regarding the jury instructions but failed to assert trial counsel's ineffectiveness for failure to preserve the issues and, accordingly, this court had held those issues waived. In his first PCHA petition, a third attorney alleged that *trial* counsel was ineffective, but failed to allege *direct appeal* counsel's ineffectiveness (in failing to allege trial counsel's ineffectiveness) and so, the PCHA court held *that* issue had been waived. *Finally*, the appellant perceived the pattern and, in a *pro se* second PCHA petition, he alleged "layered" ineffectiveness; that is, ineffectiveness of each successive counsel. The PCHA court dismissed without a hearing and appellant filed a *pro se* appeal to this Court. The majority and concurring opinions recognized that the failure of *three* successive attorneys to properly raise an issue was "extraordinary."

Justices Flaherty and Kauffman would have affirmed the denial because, in their opinions, the underlying unpreserved claim did not constitute a due process denial that significantly implicated the truth-determining process at trial. However, if the ineffectiveness standard is to have any substance at all, it was necessary in *Watlington* to provide that appellant with at least one *meaningful* opportunity to have the underlying issues reviewed, at least in the context of an ineffectiveness claim.[3] Applying the "due process-significant implication of truth determining process" test in that situation would have resulted in a Catch-22 situation for the appellant that would have deprived him of ever being heard on an issue that potentially could warrant a new trial. "It would indeed be a miscarriage of justice to hold that, because of the actions of these [three ineffective] counsel, appellant has now waived all issues, and I agree with the

[3]. That is, the underlying issue would be examined to determine whether it had arguable merit and, if so, whether counsel had a reasonable basis for pursuing the course of conduct he chose. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

majority's disposition of the case." *Id.*, 491 Pa. at 246, 420 A.2d at 434 (Larsen, J., concurring, joined by Chief Justice Michael J. Eagen).

It is unnecessary and undesirable to replace "ineffective assistance equals extraordinary circumstances" with any formula that would not allow the PCHA court to remain flexible in the exercise of sound discretion. As the phrase implies, circumstances might arise which will be truly "extraordinary" and will defy neat categorization. Therefore, the PCHA court should be free to consider *all* the myriad facts and circumstances surrounding the petition as to the decision to hold a hearing on a second (or a later successive) petition as well as the decision as to whether "extraordinary circumstances" exist excusing failure to preserve an issue. Justice Flaherty's two-fold test sets forth important *factors* for the PCHA court's consideration, but they should not be exclusive. Other relevant factors would include:

(1) The length of time between the occurrence of the asserted error and the filing of the petition, and the explanation for any delay. This factor would often be closely allied with the opportunity, or lack of opportunity, to raise a particular error at an earlier proceeding. *See* 19 P.S. § 1180–5(b); *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977); *Witt v. State*, 387 So.2d 922 (Fla. 1980), *cert. denied sub nom., Witt v. Florida*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1981). Thus, a lengthy, unexplained delay in raising an issue will buttress the presumption of knowing and understanding waiver; conversely, the immediate attempt to gain review of alleged error at the earliest possible time would have the opposite effect.

(2) Whether the collateral attack follows judgment of sentence imposed upon a plea of guilty. The only permissible challenges to a guilty plea, whether on direct appeal or in a collateral proceeding, are the jurisdiction of the court, the validity of the plea and the lawfulness of the sentence, *Commonwealth v. Alexander*, 435 Pa. 33, 255 A.2d 119 (1969) (this was the same Mr. Alexander) *and*

*Commonwealth v. Stokes*, 426 Pa. 265, 232 A.2d 193 (1967), although these claims might be inclusive of other grounds as where a petitioner alleges that an unlawfully obtained confession primarily motivated the guilty plea. *Commonwealth v. Marsh*, 460 Pa. 253, 333 A.2d 181 (1975) *and Commonwealth v. Rosenberger*, 218 Pa.Super. 95, 96 n.1, 279 A.2d 308, 309 n.1 (1971). Therefore, only claims of ineffectiveness which relate to issues which are cognizable in the PCHA proceeding would qualify for "extraordinary circumstances."

(3) Abuse of remedy. Where a petitioner, abuses the post-conviction remedy by multiple petitions designed solely for harassment, vexation, etc., the PCHA court should strongly consider denial of the petition without a hearing. *Smith v. Yeager*, 393 U.S. 122, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968); *Commonwealth ex rel. Bordner v. Russell*, 422 Pa. 365, 221 A.2d 177 (1966); *Mottram v. State*, 263 A.2d 715 (Me.1970) (no constitutional guarantee demands, and no consideration of justice permits, deliberate successive attacks on a conviction); *Greer v. State*, 262 Ind. 622, 321 N.E.2d 842 (1975) (There is no right to perpetual litigation on the part of the defendant in a criminal case.) *See Murch v. Mottram*, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), *reh. denied*, 409 U.S. 1119, 93 S.Ct. 894, 34 L.Ed.2d 704 (1972). The PCHA court should consider the number of prior petitions and the factual nature and legal character of the issue previously advanced. In this regard, it is entirely proper for the PCHA court to view a present petition in light of prior frivolous petitions. Accordingly, if a petitioner wiles away his leisure time at the jailhouse law library (a commendable endeavor in and of itself) drafting ludicrous ("patently frivolous") petitions, that is his prerogative. But where a petitioner wastes scarce judicial resources by filing frivolous petitions, he does so at the risk of downgrading the worth of future petitions. The prisoner who frivolously cries "error" should not be surprised that the PCHA court is skeptical about future petitions.

(4) Prejudice. As successive PCHA petitions are the exceptions, concrete allegations of actual prejudice should be expressed in those petitions. Abstract assertions will not suffice. *Parton v. Wyrick*, 614 F.2d 154 (8th Cir. 1980); *Turnbough v. State*, 574 S.W.2d 400 (Mo.1978). Rather, petitioner must be able to demonstrate a specific factual predicate for prejudice caused by alleged errors, including ineffectiveness of counsel. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1980) *and* 19 P.S. § 1180–9. (5) To what extent does a second (or later successive) petition simply allege a new or different legal theory for supporting an issue already decided against petitioner. *Commonwealth v. Wilson*, 452 Pa. 376, 305 A.2d 9 (1973) (merely because appellant advances a new or different theory as a basis for his previously adjudicated claim does not alter the fact that the *issue* had been decided against petitioner—issue therefore finally litigated under 19 P.S. § 1180–4(a)); *Commonwealth v. Slavik*, 449 Pa. 424, 297 A.2d 920 (1972) (same); *see Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). Thus a petitioner who has already litigated the voluntariness of a confession generally cannot later relitigate the issue on a more limited legal grounds such as a violation of the *Davenport* six-hour arraignment rule.

The list is not all-encompassing, nor should it be. It is intended only to serve as guidance to the PCHA court faced with multiple petitions. That court must evaluate the relative weights to be given these various considerations, some, none or all of which might be present at a given PCHA proceeding; other considerations not mentioned may be present which would sway the court's determination on whether to grant a hearing on a second (or later successive) petition. Predictability and certainty are valuable judicial commodities, but they cannot be exaggerated at the expense of justice. Inflexible rules which effectively preclude a prisoner from having his "day in court" are as undesirable as open-ended rules which permit ceaseless successive petitions. Accordingly, the PCHA court must consider all factors and

all legal and factual circumstances in its determination whether or not to grant a hearing on a second (or later successive) PCHA petition. The court must also consider the paramount procedural feature of the PCHA—that there be *only one petition*—and its determination must give proper deference to the presumption against multiplicity of post-conviction proceedings. That determination will be upheld on review absent abuse of discretion.

In the instant matter, Mr. Alexander's assertion that the PCHA court abused its discretion in dismissing the petition without a hearing is a flight of fancy. As we have seen, some of the issues had been finally litigated. As to those remaining issues deemed waived, Mr. Alexander's numerous prior petitions (5), the nature of some of the issues previously advanced (e. g. the patently frivolous "religious establishment" issue in the first petition), the fact that the judgments of sentence were imposed following a plea of guilty, the inordinate and unexplained amount of time which passed between the entry of that plea and the filing of the various petitions (the first twelve years later; the last 24 years later), and the nebulous claim of ineffectiveness,[4] all combine to lead unerringly to the conclusion that the present petition should, indeed, have been dismissed without a hearing.

For the foregoing reasons, the order of the Court of Common Pleas of Philadelphia County dismissing appellant's petition for post-conviction relief is affirmed.

NIX, J., filed a concurring opinion.

4. For example, appellant claims counsel was ineffective at his fourth PCHA petition because he did not request the judge to recuse himself. The absurdity of this argument is evident as Pa.R.Crim.P.R. 1502(b) *requires* that the PCHA judge be the original trial and sentencing judge unless unavailable or otherwise necessary "in the interests of justice." Additionally, appellant suggests counsel was ineffective in failing to ask him if he wished to raise "any more claims." Thankfully, neither this Court nor any other to our knowledge, have ever adopted an "Any More Claims" standard of ineffective assistance of counsel.

FLAHERTY, J., filed a concurring opinion in which KAUFFMAN, J., joined.

O'BRIEN, C. J., and ROBERTS, J., concurred in the result.

NIX, Justice, concurring.

I share the belief that the court below properly dismissed the Post Conviction hearing petition filed in this case without a hearing. I am troubled by the lengthy exposition of the majority which does more to confuse than to illuminate the factors involved.

The Act as drafted was most explicit in this regard. Section 1180–5 sets forth the information required in a petition and further notes that "the failure to raise any such issue in such petition shall be deemed a waiver of any right to future presentation of another petition containing grounds for relief that were available and could have been presented. 19 P.S. § 1180–5(b).

Further, section 1180–9 provides, *inter alia*, that the court, "may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petition." 19 P.S. § 1180–9. It would appear to me that these two sections clearly cover the concerns expressed in the majority opinion and that an attempt to set forth a list of factors, admittedly incomplete, serves no real purpose.

Nor do I believe that a fair reading of prior decisions suggest that a mere assertion of ineffectiveness justifies a finding of extraordinary circumstances that would avoid the waiver provision of section 1180–4. 19 P.S. § 1180–4; *Commonwealth v. Marsh*, 460 Pa. 253, 333 A.2d 181 (1975); *Commonwealth v. Ashley*, 277 Pa.Super. 287, 419 A.2d 775 (1980). The Act itself requires that the petition must fully set forth the factual basis supporting the claim. 19 P.S. § 1180–5. *Commonwealth v. Wilkerson*, 490 Pa. 296, 416 A.2d 477 (1980); *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Yocham*, 473 Pa. 445, 375 A.2d 325 (1977); *Commonwealth v. Walker*, 460 Pa. 658, 334

A.2d 282 (1975). Additionally, ineffective assistance of counsel, as it has been developed under our cases, addresses substantial derelictions on the part of counsel and not merely a showing of trivial and inconsequential errors or omissions. *See Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986 (1980); *Commonwealth v. Smith*, 478 Pa. 76, 385 A.2d 1320 (1978).

I therefore share the view of Mr. Justice Flaherty that the majority's efforts today succeed only in creating an "unnecessary complexity" into an area that certainly does not require further obfuscation.

FLAHERTY, Justice, concurring.

I concur in the result reached by the majority, but in the circumstances of this case—involving the *sixth* PCHA petition—I reaffirm the view expressed in my dissenting opinion in *Commonwealth v. Watlington*, 491 Pa. 241, 420 A.2d 431 (1980). The dissent in *Commonwealth v. Watlington*, joined by Mr. Justice Kauffman, was reasserted in the Opinion in Support of Affirmance in *Commonwealth v. Lowenberg*, 493 Pa. 232, 425 A.2d 1100 (1981), joined by Messrs. Justices Nix and Kauffman.

I cannot accept the majority's cumbersome list of factors for the PCHA court to consider in deciding whether to hold a hearing in a second or successive PCHA petition, not so much because I disagree with the items in the list, which in any event is incomplete, but because it introduces an unnecessary complexity into the area of law that badly needs simplification. Most importantly, the list attempts no articulation of general principles, thus leaving the lower courts substantially without guidance, which exacerbates the present problem of multiple PCHA petitions. Finally, I object to the list because it accomplishes nothing that the two-part test in the *Watlington* dissent and the Opinion in Support of Affirmance in *Lowenberg* does not accomplish.

The dissenting *Watlington* standard is that a second or successive PCHA petitioner must, in order to be heard on the merits of his claim, raise a colorable due process issue

that significantly affects the truth determining process. I would deny the petition in the instant case because it does not meet this test.

KAUFFMAN, J., joins this opinion.