J-E01001-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
KARIM HUSIEN WRIGHT, :
:
Appellant : No. 648 MDA 2011

Appeal from the PCRA Order entered March 11, 2011,
Court of Common Pleas, Berks County,
Criminal Division at No. CP-06-CR-0004799-2002

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA,
DONOHUE, ALLEN, LAZARUS, MUNDY and OLSON, JJ.

DISSENTING MEMORANDUM BY DONOHUE, J.: **FILED AUGUST 05, 2014**

Our Supreme Court has recognized that every PCRA litigant is entitled

to "at least one meaningful opportunity to have ... issues reviewed, at least

in the context of an ineffectiveness claim." ***Commonwealth v. Alexander***,

432 A.2d 182, 186 (Pa. 1981); ***see also Commonwealth v. Kaufmann***,

592 A.2d 691, 695 (Pa. Super. 1991). "Meaningful review" is best assured

when the petitioner is provided representation by competent counsel "whose

ability to frame the issues in a legally meaningful fashion insures the trial

court that all relevant considerations will be brought to its attention."

***Commonwealth v. Carrier***, 431 A.2d 271, 273 (Pa. 1981). Accordingly, by

rule our Supreme Court has mandated "that counsel be appointed in every

case in which a defendant has filed a motion for post-conviction collateral

review for the first time and is unable to afford counsel or otherwise procure

counsel." Pa.R.Crim.P. Rule 904 (Comment); Pa.R.Crim.P., 904(C). The rule mandating the appointment of counsel to first-time petitioners for PCRA relief has not been "limited to the naming of an attorney to represent an accused, but also envisions that counsel so appointed shall have the opportunity **and in fact discharge the responsibilities required by his representation**." **Commonwealth v. Fiero**, 341 A.2d 448, 450 (Pa. 1975) (emphasis added); **see also Commonwealth v. Perez**, 799 A.2d 848, 852-53 (Pa. Super. 2002); **Kaufmann**, 592 A.2d at 698. The functions of an advocate in discharging the responsibilities of the representation include "[e]xploration of the legal grounds for complaint, investigation of the underlying facts, and more articulate statement of claims …." **Kaufmann**, 592 A.2d at 697 (quoting **Commonwealth v. Mitchell**, 235 A.2d 148 (Pa. 1967)).

Four attorneys have been appointed to represent Karim Husein Wright ("Wright") since the time he filed his first *pro se* PCRA petition. None of these four attorneys have ever served as Wright's advocate in any respect whatsoever, and in fact all four have failed with respect to their professional obligations to him. By their own admissions, none of them ever made any attempt to investigate the underlying facts supporting Wright's ineffectiveness claims, including no efforts to interview any of the potential witnesses identified by Wright or to ascertain from his trial counsel what strategic basis he had for his actions at trial. Likewise, none of these four

attorneys have made any attempts to explore Wright's legal grounds for PCRA relief or to provide either the trial court or this Court with a more articulate statement of his claims than what Wright has himself provided in *pro se* filings (by necessity, given appointed counsels' repeated failures to discharge their professional responsibilities). For these reasons, I cannot join in the Majority's decision in this case, and thus must respectfully dissent.

This embarrassing saga of patently deficient and inexplicably dilatory performances by appointed counsel begins on May 6, 2005, when Wright filed a *pro se* PCRA petition, raising 13 issues. The PCRA court appointed Attorney Gail Chiodo ("Attorney Chiodo") to represent him. Over the course of the next two years, Attorney Chiodo apparently performed no services on Wright's behalf, as the only activity of record during her tenure as Wright's counsel was the filing of four requests for extensions of time to file an amended counseled PCRA petition or a **Turner**/**Finley**[1] no-merit letter. The PCRA court, without explanation, granted all four requests, providing Attorney Chiodo with extensions of time until August 12, 2005, October 31, 2005, January 31, 2006, and April 28, 2006. After another year of docket inactivity, on June 21, 2007, Attorney Chiodo moved to withdraw as Wright's counsel.

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

On June 25, 2007, the PCRA court granted Attorney Chiodo's motion and appointed Attorney Lara Glenn Hoffert ("Attorney Hoffert") to represent Wright, providing her with an extension of time until August 3, 2007 to file an amended counseled PCRA petition or a *Turner*/*Finley* no-merit letter. Attorney Hoffert likewise apparently performed no services on Wright's behalf, as the only activity of record during her tenure as Wright's counsel was the PCRA court's grant of two further extensions of time, until November 30, 2007 and then until March 31, 2008. In December 2007, Attorney Hoffert filed a motion to withdraw as Wright's counsel, which the PCRA court granted.

The PCRA court then appointed Attorney Allen Daringer ("Attorney Daringer") to represent Wright. Over the course of the next two and three quarter years, Attorney Daringer filed **eight** requests for extensions of time. Without any explanation for permitting such extraordinary and inordinate delays, the PCRA court granted all eight requests, permitting Attorney Daringer extensions of time until June 30, 2008, October 31, 2008, February 25, 2009, May 1, 2009, October 30, 2009, December 31, 2009, April 4, 2010, and July 30, 2010. Finally, on August 24, 2010, more than five years after the filing of Wright's PCRA petition, Attorney Daringer filed a *Turner*/*Finley* petition and "no merit" letter seeking to withdraw and no merit brief.

In his "no merit" letter, Attorney Daringer admits that he did not conduct any investigation into the facts underlying Wright's claims of ineffective assistance of trial counsel.[2] With respect to Wright's multiple claims of ineffective assistance of counsel for trial counsel's failure to investigate and call witnesses to provide exculpatory testimony on his behalf, Attorney Daringer made no effort to contact any of these witnesses to ascertain what testimony they could provide, nor did he seek the appointment of an investigator to do this work. Similarly, with respect to Wright's claim that his trial counsel failed to conduct an effective cross-examination of the Commonwealth's key witness at trial, Attorney Daringer rejected this claim on the grounds that trial counsel had a "sound strategy" for his lack of cross-examination, but did so without ever contacting trial counsel to ascertain what his actual strategy was (if any). Attorney Daringer did say that he "researched applicable legal theories," but the "no merit" letter contains no such legal research. In short, Attorney Daringer's efforts to advocate on Wright's behalf in developing his PCRA claims were, to put it charitably, minimal at best.

---

[2] Every "no merit" letter must contain a detailed statement of nature and extent of counsel's efforts on behalf of the client. **Finley**, 550 A.2d at 215. In his "no merit" letter," Attorney Daringer states that he reviewed the official file in Wright's case, the claims in Wright's *pro se* PCRA petition, the trial transcript, and researched applicable legal theories. No Merit Letter, 8/24/10, at 2. Other than speaking with Wright, Attorney Daringer does not indicate that he conducted any other factual investigation.

After another delay of nearly six months, on February 17, 2011, the PCRA court granted Attorney Daringer's **Turner**/**Finley** petition to withdraw as Wright's counsel. On the same date, the trial court also issued a notice of intent to dismiss Wright's PCRA petition without an evidentiary hearing, essentially adopting Attorney Daringer's "analysis" of each of Wright's issues. On March 9, 2011, Wright filed a detailed *pro se* response to the notice of intent to dismiss, and further claimed that the PCRA court had erred in granting Attorney Daringer's petition to withdraw, based upon his failure to discharge his professional obligations to Wright to investigate his claims and advocate on his behalf.[3] Two days later, on March 11, 2011, the PCRA court dismissed Wright's PCRA petition.

On December 17, 2012, a divided panel affirmed the PCRA court's dismissal, and on March 11, 2013, this Court granted Wright's petition for *en banc* review. Typically, when counsel has been permitted to withdraw pursuant to **Turner**/**Finley**, new counsel will not be appointed again and the petitioner "must thereafter look to his or her own resources for whatever further proceedings there might be." **Commonwealth v. Rykard**, 55 A.3d 1177, 1184 n.2 (Pa. Super. 2012) (quoting **Commonwealth v. Maple**, 559

---

[3] As a result, Wright adequately preserved this issue for appeal. **See** Traverse [*sic*] to February 11, 2011 Notice to Dismiss/Deny P.C.R.A. and Order Granting P.C.R.A. Counsel's Fineley [*sic*] Letter, 3/4/11, at 1-2 ("Petitioner hereby opposes the denial/dismissal of his first P.C.R.A. and the order granting P.C.R.A. counsel's Fineley [*sic*] Letter," and requesting the appointment of new PCRA counsel).

A.2d 953, 956 (Pa. Super. 1989)). In this case, however, as a result of the egregious nature of the lack of effort by prior appointed counsel and the need for Wright to have an advocate on the important issue of the required standards of performance for PCRA counsel, on October 21, 2013, this Court issued an order directing the PCRA court to appoint new counsel to represent Wright during our *en banc* review.

The PCRA court appointed Osmer S. Deming ("Attorney Deming"). Unfortunately, Attorney Deming's lack of performance here rivals, if not exceeds, those of prior appointed counsel. On January 7, 2014, Attorney Deming filed an "***Anders*** brief," even though he had been appointed pursuant to ***Turner/Finley*** and not ***Anders v. California***, 386 U.S. 738 (1967). As the Majority here forthrightly admits, Attorney Deming failed to satisfy even the most basic requirements for counsel appointed pursuant to ***Turner/Finley***, including no attempt to raise (much less discuss) the issues that Wright sought to raise on appeal. Attorney Deming's "***Anders*** brief" addresses only two of Wright's claims, and offers his personal observations and opinions about the case in the most general terms, without any attempt whatsoever to advocate on Wright's behalf. As was true of Attorneys Chiodo, Hoffert, and Daringer, Attorney Deming's "***Anders*** brief" reflects no efforts either to conduct any factual or legal investigation into Wright's claims or to provide an articulate statement of said claims so that their merit may be evaluated by this *en banc* panel.

Where appointed PCRA counsel fails to comply with **Turner**/**Finley** requirements, the proper procedure is to remand the case to the PCRA court for the appointment of new counsel. **See, e.g.**, **Commonwealth v. Kenney**, 732 A.2d 1161, 1165 (Pa. 1999); **Commonwealth v. Karanicolas**, 836 A.2d 940, 948 (Pa. Super. 2003); **Commonwealth v. Glover**, 738 A.2d 460, 465 (Pa. Super. 1999). In this case, however, the Majority has, without explanation for its failure to have new counsel appointed, proceeded to decide the appeal on the grounds that all of Wright's issues are meritless.

In my view, this failure to appoint new counsel constitutes more than the failure to follow normal procedure, and instead amounts to a violation of Wright's right to counsel. Although there may be no federal constitutional right to counsel for a post conviction collateral proceeding, through the adoption of Rule 904(C) of the Pennsylvania Rules of Criminal Procedure, our Supreme Court has determined that an indigent defendant is entitled to counsel to aid him in the completion of his first petition seeking PCRA relief, regardless of the merits of his claim. **Commonwealth v. Peterson**, 683 A.2d 908, 910 (Pa. Super. 1996). In **Finley**, this Court interpreted the Supreme Court's decision in **Turner** to require that in Pennsylvania, a petitioner for collateral relief has a right to "**effective** representation of counsel under Pennsylvania law." **Finley**, 550 A.2d at 214 (emphasis added). As a result, this Court has consistently held that "[t]he point in time

at which a trial court may determine that a PCRA petitioner's claims are frivolous or meritless is **after the petitioner has been afforded a full and fair opportunity to present those claims."** *Peterson*, 683 A.2d at 910 (emphasis added); *see also Commonwealth v. Harris*, 553 A.2d 428, 433 (Pa. Super. 1989) (same).

As a result of the repeated failures of all counsel appointed to represent him, Wright has not been afford any opportunity to have effective counsel present his claims for proper consideration. Thus, the Majority's rejection of Wright's claims as meritless here proceeds from what can at best be described as an incomplete and undeveloped record. As indicated, no counsel has investigated the factual basis for any of Wright's claims, and those claims have never been developed or articulated by competent counsel.

For example, the Majority rejects Wright's claim that trial counsel was ineffective for failing to call Angel Freytiz ("Freytiz"), the doorman at the nightclub, on the grounds that Wright "does not explain" how his testimony could have changed the outcome of the trial. Majority Memorandum at 11. Appointed counsel advocating on Wright's behalf, of course, should have provided this explanation. Moreover, even on the current record, I cannot say that this claim lacks merit. According to Wright, Freytiz would testify that he frisked Wright when he entered the nightclub and that Wright was unarmed. Freytiz would further testify that Wright did not leave the

nightclub from the time of his initial entry until the subsequent shooting (*e.g.*, to obtain a weapon). Freytiz's testimony would constitute some evidence that Wright was unarmed while inside the nightclub, and thus did not shoot the victim. Freytiz's testimony would also constitute some basis for challenging the credibility of the testimony of Holmes, the lone eyewitness to the shooting called by the Commonwealth at trial. Specifically, Freytiz's testimony would have tended to contradict Holmes' testimony that he saw Wright pull a gun out of his pocket and shoot the victim. Testimony that Wright entered the nightclub unarmed would also have called into question the importance of the testimony of Lynnita Theodile, who told the jury that Wright had said he "felt like getting into something" when he departed for the nightclub – with the clear implication to the jury that the "something" was the shooting in question. Finally, while it is certainly possible that Wright entered the nightclub unarmed but later obtained a gun from someone while inside, the Commonwealth introduced no evidence to this effect.

In his "no merit" letter, Attorney Daringer rejected Freytiz as a witness potentially helpful to the defense, stating that "Freytiz could not testify, and [Wright] does not suggest he could, that he saw [Wright] with or without a gun at the time of the shooting," and thus Freytiz's testimony "would not

have resulted in a different outcome at trial."[4]  No Merit Letter, 8/24/10, at 5.  Based upon the disclosures in his "no merit" letter, however, Attorney Daringer made his determination regarding lack of prejudice without undertaking any factual investigation into the merits of Wright's claim.  From the "no merit" letter, it is clear that despite having been appointed to represent Wright for nearly three years, Attorney Daringer made no attempt to contact Freytiz to determine the extent of his knowledge regarding the events that occurred on the night in question, including his recollection of the lapse in time from Wright's entry until the shooting, the ease or difficulty in having someone else provide Wright with a gun after his entry, and/or Freytiz's potential credibility (or lack thereof) as a witness at an evidentiary hearing.  Attorney Daringer likewise did not seek the appointment of an investigator to assist in an investigation of Wright's claims.[5]  ***Cf.***

---

[4]  The Majority apparently also accepts as true Attorney Daringer's complaint that Wright did not give him as much information as possible to investigate and contact Freytiz and other witnesses.  Majority Memorandum at 4.  Attorney Daringer's "no merit" letter reflects that Wright provided him with the names and possible testimony of each witness, but does not indicate that he requested any other information that was not forthcoming.  In addition, the "no merit" letter provides no explanation as to how the absence of any such (unidentified) information precluded Attorney Daringer from contacting these witnesses.

[5]  In his "***Anders*** brief," Attorney Deming observes that "from a practicability standpoint, the Berks County Court of Common Pleas is less than receptive to approving" requests for investigators.  "Anders" Brief at 20.  In his *pro se* Brief in Opposition to Anders Brief, Wright astutely asks "what practicality has to do with advocacy."  Brief in Opposition to Anders Brief at 18.  Attorney Daringer's failure to contact the potential witnesses

*Commonwealth v. Brown*, 767 A.2d 576 (Pa. Super. 2001) (ineffectiveness claims for failure to call witnesses determined to be meritless after a court-appointed investigator could not locate them).

The Majority likewise rejects Wright's claim that trial counsel was ineffective for failing to call bartender Sam Castillo, again merely because Wright "does not explain" how his testimony could have changed the outcome of the trial. Majority Memorandum at 11. In October 2005, Castillo signed an affidavit that states as follows:

> Before me the subscriber personally appeared Samuel Castillo to be known, who being duly sworn according to law, doth depose and say "I was working at tunnel the night of the shooting everything was normal wasn't busy that night few minutes before the shooting I was serving [Wright] and few people around him he was sitting to left of the bar I was serving drinks for someone else when I heard to shoots I duck behide the bar running I open the basement door and ran out I remember [Wright] was right next to me that's why I don't think he did the shooting."

No Merit Letter, Exhibit A, 8/24/10 (without correction of spelling or punctuation in original). As with Freytiz, Attorney Daringer rejected Wright's ineffectiveness claim for lack of prejudice, since Castillo "makes no mention of where [Wright] was at the time of the shooting," and did not implicate any other individual as the shooter. *Id.* at 6. Attorney Daringer noted that while Castillo places Wright in a location some distance away a "few minutes

---

himself, or to seek the appointment of an investigator to do so for him, clearly reflects his lack of advocacy in this regard.

**before** the shooting" and saw him running out the basement door **after** the shooting, he could not testify to Wright's exact location at the precise moment of the shooting.

Attorney Daringer's "no merit" letter does not indicate that he made any attempt to locate and interview Castillo. This failure is particularly significant with respect to Castillo since his affidavit is poorly written, obviously uncounseled, and raises more questions than it answers. Prior to determining whether Castillo's testimony would have been useful to Wright's defense, one would need considerably more information that what is contained in the affidavit, including, for example, how far away Wright was from the precise location of the shooting when he saw him sitting to the left of the bar; whether he saw Wright get up from his seated location before the shooting; how soon after hearing the shots did he see Wright running out the back door; whether he observed any visible signs that Wright had just been involved in a fistfight; and any other reasons for his belief that Wright was not the shooter. Absent any such information from Castillo, however, and despite no apparent efforts to locate and interview him, Attorney Daringer concluded that Castillo's testimony could not have affected the outcome of the case.

Moreover, as with Freytiz, Attorney Daringer did not attempt to advocate on Wright's behalf, and in the absence of more information, I cannot conclude that this issue lacks any merit. Attorney Daringer

essentially concluded that only an eyewitness to the shooting, who can identify the actual perpetrator of the crime, may offer testimony sufficient to satisfy the "prejudice" prong of the ineffectiveness test. Attorney Daringer cited to no authority for this proposition, and I am not aware of any such authority. On its face, Castillo's testimony appears to be exculpatory for Wright, as it places him next to Castillo and away from the location of the shooting immediately after, or shortly after, Castillo heard the shots. In addition, Castillo's testimony that Wright ran out the **back door** directly contradicts Holmes' testimony, as Holmes testified that he saw Wright run out the **front door** of the nightclub after the shooting. N.T., 3/25/03, at 192.

Finally, for the same reasons, the Majority rejects Wright's claim that trial counsel was ineffective for failing to call the mother of Felicia Martin to testify. At trial, Felicia Martin testified in Wright's case-in-chief that she was at the nightclub and heard shots fired. N.T., 3/26/03, at 410-14. She further testified that she was subsequently interviewed by Investigator Christopher Santoro, and told him that she did not see who fired the shots. *Id.* She said that Investigator Santoro accused her of lying, and threatened that she should admit that she saw Wright shoot the victim since Wright, knowing that she had been interviewed by the police, would kill her mother and little brother and possibly herself (Felicia) as well. *Id.* The Commonwealth then called Investigator Santoro in rebuttal, at which time

he testified that while he had conducted an interview with her in an effort to procure her testimony, he had said nothing to convey threats to her mother or little brother. *Id.* at 414-21. To the contrary, Investigator Santoro testified that he did not even know that Felicia Martin had a mother or a little brother. *Id.*

Attorney Daringer concluded that this ineffectiveness claim was meritless because Felicia Martin testified that she did not see the shooter and her mother's testimony would not have aided in identifying the shooter. No Merit Letter, 8/24/10, at 7. This response reflects a clear lack of advocacy by Attorney Daringer, however, as Wright wanted Felicia Martin's mother to testify for an entirely different purpose – namely in *sur rebuttal* to contradict Investigator Santoro's testimony that he never attempted to force Felicia Martin to identify Wright as the shooter with threats against her and her family members. According to Wright, Felicia Martin's mother would testify that Investigator Santoro clearly knew of her existence because she personally met with him and inquired regarding the substance of the interview before it took place. Petitioner's Opposition of Order and Notice of Intent to Dismiss, 3/10/11, at 8. Investigator Santoro's credibility was of some significance, since he was later involved in acquiring the eyewitness testimony of Jermaine Holmes ("Holmes") approximately a week and a half prior to the start of trial. N.T., 3/25/03, at 195.

Based upon the current state of the record on appeal, I cannot say that the testimony of Felicia Martin's mother, by itself, would be sufficiently prejudicial to support a claim of ineffective assistance of counsel. I note, however, that Attorney Daringer, in making no attempt to advocate on Wright's behalf, did not even consider the possibility that her testimony, when combined with that of Freytiz, Castillo, and other witnesses, could **cumulatively** result in sufficient prejudice to support Wright's ineffectiveness claims. Our Supreme Court has repeatedly held that even when individual claims of ineffective assistance of counsel fail for a lack of prejudice, the "cumulative prejudice from those individual claims may properly be assessed." **Commonwealth v. Spotz**, 18 A.3d 244, 321 (Pa. 2011); **Commonwealth v. Lesko**, 15 A.3d 345, 376 (Pa. 2011); **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009) ("[I]f multiple instances of deficient performance are found, the assessment of prejudice properly may be premised on cumulation.").

Wright also claims that his trial counsel was ineffective for failure to thoroughly cross-examine and impeach Holmes, which the trial court described as the Commonwealth's "key witness" at trial. Order and Notice of Intent to Dismiss, 2/17/11, at 8. Among trial counsel's alleged failures in this regard were his failures to highlight Holmes' prior statements to the police that he had not seen the shooting and thus could not identify the shooter; his pending drug charges at the time of his testimony; and that

- 16 -

Holmes testified that the shooter used his left hand to shoot the gun, while Wright is right-handed. Holmes testified that he initially lied to the police because he was on parole and was thus fearful of the consequences if the police learned that he was at the nightclub, since he "didn't belong in the club." N.T., 3/25/03, at 195. Trial counsel asked Holmes only a couple of questions on this point, and did not press Holmes on the apparent inconsistency in his explanation for lying – since he had immediately told the police that he was at the nightclub and only lied about not knowing the identity of the shooter. *Id.* In total, the entire cross-examination of Holmes covers just over three pages of the trial transcript. *See id.* at 198-201.

Attorney Daringer concluded that this ineffectiveness claim lacked merit because trial counsel had a reasonable strategic basis for his actions:

> A review of trial counsel's cross-examination shows that he had a very sound strategy for his questioning and limiting the amount of time and information needed from Mr. Holmes. Trial counsel appears to have recognized that Mr. Holmes was a very effective Commonwealth witness and limiting Mr. Holmes' appearance before the jury was an important part of the defense strategy.

No Merit Letter, 8/24/10, at 10.

Unfortunately, Attorney Daringer's "no merit" letter makes clear that he reached these conclusions regarding trial counsel's "sound strategy" without ever contacting trial counsel to inquire as to what his *actual strategies* were. The "reasonable basis" prong of the ineffectiveness test is

not satisfied merely because appointed counsel (or the PCRA court) is able to concoct a strategic basis that fits with trial counsel's actions or omissions. *See, e.g.*, *Commonwealth v. Duffey*, 855 A.2d 764, 775 (Pa. 2004) (in the absence of testimony from counsel, the court "should refrain from gleaning whether … a reasonable basis exists"). "The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged defect in the abstract." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (quoting *Commonwealth v. Colivita*, 993 A.2d 874, 896 (Pa. 2010)). Only where the record on appeal clearly establishes the reasonable basis prong may the issue be decided without an evidentiary hearing to determine trial counsel's actual strategies. *Commonwealth v. Williams*, 899 A.2d 1060, 1065 (Pa. 2006) (citing *Commonwealth v. McGill*, 832 A.2d 1014 (Pa. 2003)); *see also Commonwealth v. Gribble*, 863 A.2d 455, 473-74 (Pa. 2004) ("[T]his Court has expressed a distinct preference for a hearing on counsel's strategy before venturing to hold that counsel lacked a reasonable basis for his or her actions.").

Nothing in the certified record on appeal establishes what trial counsel's strategic basis was for severely limiting the cross-examination of Holmes as he did. In fact, the record does not disclose that counsel even considered his cross-examination to be limited, that he intentionally declined to ask Holmes any other questions he considered relevant and useful to Wright's defense, or that he considered Holmes to be an effective witness for

the Commonwealth. Accordingly, Attorney Daringer's conclusion regarding trial counsel's strategic basis, without ever conferring with trial counsel, constitutes mere guesswork and reflects a clear lack of advocacy on behalf of Wright.

For these reasons, based upon the failures of all appointed counsel, most recently Attorney Deming, this case should be remanded for the appointment of new counsel to represent Wright in connection with his first PCRA petition. In my view, the trial court erred in granting Attorney Daringer's **Turner**/**Finley** petition to withdraw from representation, and the Majority here has missed the opportunity to provide clear guidance with respect to the professional obligations of appointed counsel in PCRA cases. This Court should not affirm the dismissal of PCRA petitions when appointed counsel has thoroughly failed to satisfy his or her obligations.

Accordingly, I dissent.